# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | In proceedings under |
| | ) | Chapter 11 |
| NATURE'S SECOND CHANCE | ) | |
| HAULING, LLC, | ) | |
| | ) | |
| Debtor. | ) | Bk. No. 18-30328 |
| | ) | |
| NATURE'S SECOND CHANCE | ) | |
| HAULING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 18-03016 |
| | ) | |
| GROUPKLT, INC., KLT LOGISTICS, | ) | |
| INC., KLT TRANSPORT, LLC, and | ) | |
| KLT INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT
## FOR ACCOUNTING, TURNOVER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, BREACH OF FIDUCIARY DUTY, TO AVOID AND RECOVER TRANSFERS, AND TO DISALLOW CLAIMS

NATURE'S SECOND CHANCE HAULING ("Hauling"), by and through its undersigned attorneys, and for its First Amended Complaint for Accounting, Turnover, Preliminary and Permanent Injunctive Relief, and to Avoid and Recover Transfers states as follows:

## Parties, Jurisdiction and Venue

1.      Hauling is a limited liability company organized under the laws of the State of Missouri with its principal place of business in Alton, Illinois.

1

2.     On March 19, 2018, Hauling filed its voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"), and has since been managing its financial affairs as a Debtor in Possession.

3.     GROUPKLT, Inc. ("Group") is a Delaware corporation with its principal place of business in Marlborough, Massachusetts.

4.     KLT Logistics, Inc. ("Logistics") is a Delaware corporation with its principal place of business in Marlborough, Massachusetts.

5.     KLT Transport, LLC ("Transport") is a Connecticut limited liability company with its principal place of business in Woodstock, Connecticut.

6.     KLT Industries, Inc. ("Industries") is a Rhode Island corporation with its principal place of business in Chepachet, Rhode Island.  Group, Logistics, Transport, and Industries are sometimes referred to collectively herein as the "KLT Parties."

7.     The Court has jurisdiction over this adversary proceeding, and the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105, 541, 542, 544, 547, 548, 549, 502, and 550.

8.     This adversary proceeding is a "core" proceeding within the contemplation of 28 U.S.C. § 157(b)(2).

9.     Hauling consents to entry of a final order and judgment by the United States Bankruptcy Court for the Southern District of Illinois.

10.     Venue of this adversary proceeding is appropriate in the United States Bankruptcy Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1409(a).

### Factual Background

11.     Hauling is a trucking company specializing in picking up recyclable paper, such as cardboard, and delivering it to paper mills for the purpose of recycling into new boxes and similar paper/cardboard items.

12.     Hauling's major customers are Waste Management, International Paper, Georgia Pacific and WestRock.  Those companies contract with Hauling to pick up bales of cardboard and plastic at large retailers such as Wal-Mart, Home Depot, Lowes, and similar retail establishments.  Once Hauling picks up the bales, it delivers them to customers who then recycle the delivered product.

13.     Hauling operated in 25 states and had a fleet of 150 trucks and Bobcats. Hauling had 300 employees.  Hauling leased its vehicles from commercial leasing companies and from a related entity: Nature's Second Chance Leasing, LLC ("Leasing", occasionally referred to collectively herein with Hauling as "NSC").

14.     Hauling expended substantial sums in developing its customer base and acquiring (through Leasing) the equipment necessary to service its customers and generate revenue.

15.     On January 13, 2017, Group, Hauling, Leasing, and the then-members of Hauling and Leasing, Vern Van Hoy and J. Thomas Long, entered into a Management Agreement, under which Group agreed to undertake management of the day-to-day operations of Hauling's and Leasing's business operations and financial affairs.  A true and correct copy of the Management Agreement is attached hereto as **Exhibit A**.

16.     Subject to adjustment in Section 4 of the Management Agreement, Group was to receive compensation in the sum of $200,000.00 per year, and it further obtained an option to acquire all of the membership interests in or assets of NSC.

17.     At no time did Group exercise the option to acquire the membership interests in or assets of NSC.

18.     The Management Agreement permitted Group to take control of Hauling's cash, and make payment to Hauling's vendors and other creditors.

19.     Group had numerous obligations under the Management Agreement.  It further was prohibited from taking certain actions under the Management Agreement.

20.     Under the Management Agreement, Group was required to make payment on account of NSC's indebtedness.  Management Agreement at §8 a) i).

21.     Under the Management Agreement, Group was required to obtain, on behalf of NSC, general liability and workers' compensation insurance.  Management Agreement at §8 a) ii).

22.     Under the Management Agreement, Group was required to ensure that NSC's accounts payable not exceed the sum of $500,000.00 or average more than 60 days past due in the absence of a bona fide dispute concerning such accounts payable. Management Agreement at §8 a) iii).

23.     Under the Management Agreement, Group was prohibited from engaging in any theft, embezzlement, or defalcation of any of NSC's assets.  Management Agreement at §8 a) iv).

24.     Under the Management Agreement, Group was required to pay all of NSC's payroll.  Management Agreement at § 8 a) v).

25.     Under the Management Agreement, Group was prohibited from moving any of NSC's operating accounts absent consent of NSC's lenders.  Management Agreement at §8 a) vi).

26.     Under the Management Agreement, Group was prohibited form knowingly causing any commingling of funds between itself and NSC.  Management Agreement at §8 a) vii).

27.     For a time, the parties operated successfully under the terms of the Management Agreement.  In that respect, to the best of Hauling's knowledge, Group fulfilled its obligations under the Management Agreement and did not engage in conduct prohibited under the Management Agreement.

28.     During the fourth quarter of 2017 and for a time in January and February 2018, NSC and Group engaged in negotiations concerning the purchase of NSC's assets by one or more of the KLT Parties.

29.     While negotiations with NSC were ongoing, and without NSC's knowledge, the KLT Parties began to assimilate NSC's business and assets, including Hauling's customers.

## COUNT I
## COMPLAINT FOR TURNOVER DIRECTED AT THE KLT PARTIES

30.     Hauling repeats and realleges paragraphs 1 through 29 of this First Amended Complaint as though fully set forth in this Count I.

31.     In January, 2018, Hauling learned for the first time that Group or one or more of the KLT Parties had invoiced Hauling's customers as though they were customers of Group or one or more of the KLT Parties.

32.     Hauling inquired concerning the invoicing and was told by Group that it was a "mistake."

33.     Hauling thereafter learned that equipment owned by Leasing and used by Hauling in the operation of its business was "relabeled" to indicate it was being operating by one or more of the KLT Parties.

34.     On or about March 14, 2018, Hauling, through one of its bankers, learned that it was not collecting the proceeds from its accounts receivable, and it further learned that its funds were being used to pay what appear to be inflated invoices from one or more entities related to the KLT Parties.

35.     Hauling further learned that in early March, 2018, an employee of one of the KLT Parties, while using Hauling's internet/email domain name directed Waste Management, Inc., to make all payments to Group.   A copy of the email exchange evidencing that direction from Group is attached hereto as **Exhibit B**.

36.     Hauling has obtained photographic evidence that as recently as March 27, 2018, the KLT Parties were operating trucks under Hauling's registry with the US Department of Transportation for transporting goods under a bill of lading in the name of the KLT Parties.

37.     Hauling is further informed and believes the KLT Parties are using Hauling's Comdata credit card to purchase fuel for trucks used to transport cardboard

for Hauling's customers for the benefit of the account of the KLT Parties.  In other words, the KLT Parties are incurring debt chargeable to Hauling and creating accounts receivable the KLT Parties intend to collect for their own benefit and to the exclusion of Hauling.

38.    In summary, since the beginning of 2018, or shortly thereafter, the KLT Parties have been billing and collecting from Hauling all sums that would otherwise have been available to Hauling for payment of its obligations.

39.    Hauling did not authorize any of the foregoing actions by the KLT Parties.

40.    Sums received by the KLT Parties as a result of services performed for Hauling's customers and sums paid on account of inflated invoices to one or more of the KLT Parties (the "Proceeds") constitute property of Hauling's Chapter 7 bankruptcy estate pursuant to Section 541(a) of the United States Bankruptcy Code.

41.    In addition, the KLT Parties are in possession of Hauling's financial data, information concerning its assets and liabilities, and other operational information. Specifically, the KLT Parties have possession of all billing records, account receivable data, account payable information, expense records, and similar information necessary for Hauling to remain apprised of its financial condition and to police payments to its creditors.  The foregoing shall be referred to, collectively, as the "Data."

42.    Since early 2018, the KLT Parties precluded access to the Data by Hauling, its principals and professionals.

43.     Hauling has demanded that the KLT Parties restore access to the Data by Hauling, its principals, and professionals; however, despite such demands, the KLT Parties have refused and continue to refuse to restore such access.

44.     The commencement of Hauling's Chapter 11 case created an estate, which consist of all legal or equitable interests of Hauling in property.   11 U.S.C. §541(a)(1).

45.     Section 542 of the Bankruptcy Code requires that an entity in possession, custody, or control of property a debtor in possession may use, sell, or lease, shall account for and deliver such property to the debtor in possession.

46.     Sums collected by the KLT Parties from Hauling's customers constitute property of Hauling's Chapter 11 estate, and the KLT Parties are required to account for such sums and turn those sums over to Hauling pursuant to Section 542 of the Bankruptcy Code.

47.     Furthermore, the Data constitutes Hauling's property and is property Hauling may use in prosecution of this Chapter 11 case.

48.     The Proceeds and the Data are not of inconsequential value and benefit to the estate.

49.     The KLT Parties should be required to immediately account for and turnover to Hauling all sums received by the KLT Parties in exchange for services rendered to Hauling's customers.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment requiring the KLT Parties (as defined herein) to (a) account for all sums received for the period January 1, 2018

through the date of entry of judgment on account of services provided to Hauling's customers, (b) account for all sums disbursed in satisfaction of accounts payable charged to Hauling for the period January 1, 2018 through the date of entry of judgment, (c) turnover to Hauling all sums received from January 1, 2018 through the date of entry of judgment on account of services provided to Hauling's customers, (d) restore Hauling's access to the Data (as defined above), and Hauling prays for such additional relief as the Court deems appropriate.

**COUNT II**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF DIRECTED AT THE KLT PARTIES**

50.     Hauling repeats and realleges paragraphs 1 through 49 of this First Amended Complaint as though fully set forth in this Count II.

51.     In addition to the foregoing, Hauling is informed and believes, that having assimilated and absorbed Hauling's business, the KLT Parties are engaged in negotiations for the sale of the assets and the business which includes Hauling's business and customer relationships.

52.     A sale of Hauling's business and assets would cause substantial harm to its Chapter 11 estate and the ability of creditors to recover sums payable to them.

53.     Further, KLT Parties' unauthorized actions in using and benefiting from Hauling's business, to the exclusion of Hauling, in addition to disposing of Hauling's assets and business without the consent of Hauling's principals, threatens Hauling in an unascertainable amount of damages.

54.     Hauling has a clear ascertainable right to its Data, Proceeds, and control of the Hauling business and its assets, including making decisions concerning the direction of the business and its assets. This right is in need of immediate protection.

55.     KLT Parties' continued use of Hauling's Data, Proceeds, and business assets to Hauling's exclusion and detriment is causing, and will continue to cause irreparable harm to Hauling's business, Hauling's relationships with employees and customers, Hauling's goodwill and reputation in its established business markets, and the swift administration of Hauling's Chapter 11 estate, for which Hauling has no adequate remedy at law.

56.     The benefits of issuing an injunction in Hauling's favor far outweigh any potential harm to Defendants, as Defendants have no right to the continued unauthorized use of Hauling's Data, Proceeds, and business assets, and such unauthorized use poses unascertainable harm to Hauling's business, Hauling's relationships with employees and customers, Hauling's goodwill and reputation, and the swift administration of Hauling's Chapter 11 estate.

57.     Hauling is likely to succeed on the merits of its case, as the KLT Parties' are in clear violation of the Management Agreement, and have manifested a clear intent to assimilate and absorb Hauling's business, with the future intent of selling Hauling's business and assets without Hauling's knowledge, involvement, or consent.

58.     Issuing an injunction in Hauling's favor will not harm the public interest, as the injunction will help protect the integrity of the administration of Hauling's Chapter 11 case, and its creditors' ability to recover sums payable to them.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter an Injunction Order: (a) enjoining the KLT Parties (as defined herein), from altering, by means of conversion or termination, any and all of Hauling's existing customer relationships; (b) ordering the KLT Parties to direct all collected money due Hauling to Hauling; (c) enjoining the KLT Parties from accruing any debt on behalf of Hauling; (d) enjoining the KLT Parties from using or trading on Hauling's copyrights and US Department of Transportation License; (e) ordering the KLT Parties to grant Hauling's principals and professionals full and complete access to Hauling's Data as defined herein; (f) ordering the KLT Parties to turn over all Proceeds as defined herein to Hauling; (g) ordering expedited discovery and trial date on Hauling's Motion for Permanent Injunction; and (i) for such other and further relief as this court deems just and reasonable.

## COUNT III
## BREACH OF FIDUCIARY DUTY DIRECTED AT
## DEFENDANT GROUPKLT, INC.

59.    Hauling repeats and realleges paragraphs 1 through 58 of this First Amended Complaint as though fully set forth in this Count III.

60.    As more fully detailed in Exhibit A and Count I above, on January 13, 2017. Group, Hauling, Leasing, and the then-members of Hauling and Lease, Vern Van Hoy and J. Thomas Long, entered into a Management Agreement, under which Group agreed to undertake management of the day-to-day operations of Hauling's and Leasing's business operations and financial affairs.

61.     Group had numerous obligations under the Management Agreement, including controlling Hauling's cash,  making payments on Hauling's behalf to Hauling's vendors, creditors, and on account of NSC's indebtedness; paying NSC's payroll; obtaining general liability and workers' compensation insurance on behalf of NSC, and ensuring NSC's accounts payable did not exceed the sum of $500,000.00 or average more than 60 days past due in the absence of a bona ride dispute concerning such account payable.

62.     Group was also prohibited from taking certain actions under the Management Agreement, including engaging in theft, embezzlement, or defalcation of NSC's assets, moving any of NSC's operating accounts absent consent, and knowingly causing any commingling of funds between Group and NSC.

63.     By virtue of its obligations under the Management Agreement, and as an insider of Hauling within the definition of 11 U.S.C. § 101(31), Group owed a fiduciary duty to Hauling.

64.     Starting in or about the fourth quarter of 2017, Group began engaging in activities directly prohibited under the Management Agreement, and in further breach of its fiduciary duty owed to Hauling.  Such activities include, but are not limited to the following:

> (a)     Engaging in negotiations concerning the purchase of NSC's assets by one or more of the KLT parties;
> (b)     Assimilating NSC's business and assets, including Hauling's customers;
> (c)     Invoicing and billing Hauling's customers as though they were customers of Group or one or more of the KLT Parties;

(d)     Usurping and relabeling equipment owned by Leasing and used by Hauling in the operation of its business to indicate it as being operated by one or more of the KLT Parties;

(e)     Using funds collected from Hauling's accounts receivable to pay inflated invoices from one or more entities related to the KLT Parties;

(f)     Directing Hauling's customers to make payments to Group;

(g)     Operating trucks under Hauling's registry with the US Department of Transportation for transporting goods under a bill of lading in the name of KLT Parties;

(h)     Incurring debt chargeable to Hauling and creating accounts receivable intended to be collected for the KLT Parties' own benefit to the exclusion of Hauling; and

(i)     Precluding access by Hauling to Hauling's Data (as defined herein).

65.     At no time did Hauling authorize any of the aforementioned actions.

66.     As a direct result of Group's engagement in self-interested transactions and breach of fiduciary duty, Hauling has sustained damages, including the depletion and misappropriation of business assets, the incurrence of unauthorized debt chargeable to Hauling for one or more of the KLT Parties' benefit to the exclusion of Hauling, loss of use and control of operating equipment and vehicles, impaired customer and employee relationships, and innumerable harm to Hauling's goodwill and business reputation.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC respectfully requests and prays that this Court enter its Order and Judgment against GROUPKLT, INC. in an amount to be determined at trial, and for such other and further relief as the Court deems just and appropriate.

## COUNT IV
## AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS AND TO DISALLOW CLAIMS DIRECTED AT DEFENDANT GROUPKLT, INC.

67.    Hauling repeats and realleges paragraphs 1 through 67 of this First Amended Complaint as though fully set forth in this Count IV.

68.    On or within the ninety (90) days before the Petition Date, that is between December 19, 2017 and March 19, 2018 (the "Preference Period"), and/or within one year before the Petition Date, that is between March 19, 2017 and March 19, 2018, Hauling continued to operate its business affairs, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including Group.

69.    During the Preference Period and/or the one-year period before the Petition Date, Hauling made no less than thirty-five (35) transfers to Group in an amount not less than the aggregate sum of $2,323,334.97 (the "Group Transfers").

70.    At the time of the Group Transfers, Group was a creditor of Hauling within the meaning of 11 U.S.C. § 101(10).

71.    At the time of the Group Transfers Group was an insider of Hauling within the meaning of 11 U.S.C. § 101(31).

72.    At the time of the Group Transfers, Group held a right to payment on account of an obligation owed to Group by Hauling.

73.    The Group Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Group Transfers either reduced or fully satisfied a debt then owed by Hauling to Group.

74.    The Group Transfers were for, or on account of, antecedent debts owed by Hauling before the Transfers were made.

75.    At the time the Group Transfers were made, Hauling was insolvent, in that the sum of its liabilities exceeded the fair value of Hauling's assets.

76.    As a result of the Group Transfers, Group received more than it would have received if: (i) the Group Transfers had not been made; and (ii) Group received payment of its debts under the provisions of the Bankruptcy Code.

77.    In accordance with the foregoing, the Group Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

78.    Group was the initial transferee of the Group Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Transfers were made.

79.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

80.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant GROUPKLT, INC.: (a) Avoiding the Group Transfers (as defined herein) in the amount

of $2,323,334.97 pursuant to 11 U.S.C. § 547; (b) Ordering that all avoided Group

Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 547, be recovered by

Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. §

502(d) and (j) any Claims held by Group and/or its assignee(s) until Group satisfies the

judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from

the date of each Group Transfer to the date of judgment herein; (e) Awarding post

judgment interest at the maximum legal rate running from the date of judgment herein

until the date the judgment is paid in full, plus costs; (f) Requiring Group to pay forthwith

the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other

and further relief as the Court deems just and reasonable.

### COUNT V
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 548 AND TO DISALLOW CLAIMS DIRECTED AT
### DEFENDANT GROUPKLT, INC.

81.     Hauling repeats and realleges paragraphs 1 through 79 of this First

Amended Complaint as though fully set forth in this Count V.

82.     At various times, and from time to time, Hauling made transfers of money

to Group.

83.     The transfers from Debtor to Group were in the form of, among other

things, checks drawn from Hauling's operating accounts.

84.     Upon information and belief, during the two (2) year period preceding the

commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain

transfers to Group in the aggregate sum of no less than 2,323,334.97 (the "Group Fraudulent Transfers").

85.     Hauling did not receive reasonably equivalent value in exchange for the Group Fraudulent Transfers.

86.     Hauling was insolvent at the time of the Group Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

87.     Alternatively, at the time of the Group Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

88.     The Group Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548.

89.     Alternatively, in the event the Group Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 548, they are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, as more fully alleged in Count VI below.

90.     Group was the initial transferee of the Group  Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Fraudulent Transfers were made.

91.     As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Fraudulent Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

92.     Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether

previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant GROUPKLT, INC.: (a) Avoiding the Group Fraudulent Transfers (as defined herein) in the amount of $2,323,334.97 pursuant to 11 U.S.C. § 548; (b) Ordering that all avoided Group Fraudulent Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 548, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by Group and/or its assignee(s) until Group satisfies the judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Group Fraudulent Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs; (f) Requiring Group to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

### COUNT VI
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544 AND TO DISALLOW CLAIMS DIRECTED AT DEFENDANT GROUPKLT, INC.

93.     Hauling repeats and realleges paragraphs 1 through 92 of this First Amended Complaint as though fully set forth in this Count VI.

94.    At various times, and from time to time, Hauling made transfers of money to Group.

95.    The transfers from Debtor to Group were in the form of, among other things, checks drawn from Hauling's operating accounts.

96.    Upon information and belief, during the four (4) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Group in the aggregate sum of no less than 2,323,334.97 (the "Group Fraudulent Transfers").

97.    Hauling did not receive reasonably equivalent value in exchange for the Group Fraudulent Transfers.

98.    Hauling was insolvent at the time of the Group Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

99.    Alternatively, at the time of the Group Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

100.    The Group Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*

101.    Alternatively, in the event the Group Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, they are avoidable pursuant to 11 U.S.C. § 548 as more fully alleged in Count V above.

102.    Group was the initial transferee of the Group Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Fraudulent Transfers were made.

103.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Fraudulent Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

104.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant GROUPKLT, INC.: (a) Avoiding the Group Fraudulent Transfers (as defined herein) in the amount of $2,323,334.97 pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*; (b) Ordering that all avoided Group Fraudulent Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by Group and/or its assignee(s) until Group satisfies the judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Group Fraudulent Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the

date the judgment is paid in full, plus costs; (f) Requiring Group to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

## COUNT VII
## AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS AND TO DISALLOW CLAIMS DIRECTED AT DEFENDANT KLT INDUSTRIES, INC.

105.    Hauling repeats and realleges paragraphs 1 through 104 of this First Amended Complaint as though fully set forth in this Count VII.

106.    On or within the ninety (90) days before the Petition Date, that is between December 19, 2017 and March 19, 2018 (the "Preference Period"), and/or within one year before the Petition Date, that is between March 19, 2017 and March 19, 2018, Hauling continued to operate its business affairs, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including Industries.

107.    During the Preference Period and/or the one-year period before the Petition Date, Hauling made no less than fourteen (14) transfers to Industries in an amount not less than the aggregate sum of $904,339.14 (the "Industries Transfers").

108.    At the time of the Industries Transfers, Industries was a creditor of Hauling within the meaning of 11 U.S.C. § 101(10).

109.    At the time of the Industries Transfers, Industries was an insider of Hauling within the meaning of 11 U.S.C. § 101(31).

110.    At the time of the Industries Transfers, Industries held a right to payment on account of an obligation owed to Industries by Hauling.

111.    The Industries Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Industries Transfers either reduced or fully satisfied a debt then owed by Hauling to Industries.

112.    The Industries Transfers were for, or on account of, antecedent debts owed by Hauling before the Transfers were made.

113.    At the time the Industries Transfers were made, Hauling was insolvent, in that the sum of its liabilities exceeded the fair value of Hauling's assets.

114.    As a result of the Industries Transfers, Industries received more than it would have received if: (i) the Industries Transfers had not been made; and (ii) Industries received payment of its debts under the provisions of the Bankruptcy Code.

115.    In accordance with the foregoing, the Industries Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

116.    Industries was the initial transferee of the Industries Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Transfers were made.

117.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Transfers, in the respective aggregate sum of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

118.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays

to Hauling an amount equal to the aggregate amount of the avoidable Industries Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant KLT INDUSTRIES, INC.: (a) Avoiding the Industries Transfers (as defined herein) in the amount of $904,339.14 pursuant to 11 U.S.C. § 547; (b) Ordering that all avoided Industries Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 547, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by Industries and/or its assignee(s) until Industries satisfies the judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Industries Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs; (f) Requiring Industries to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

## COUNT VIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548 AND TO DISALLOW CLAIMS DIRECTED AT DEFENDANT KLT INDUSTRIES, INC.

119.    Hauling repeats and realleges paragraphs 1 through 118 of this First Amended Complaint as though fully set forth in this Count VIII.

120.    At various times, and from time to time, Hauling made transfers of money to Industries.

121.    The transfers from Debtor to Industries were in the form of, among other things, checks drawn from Hauling's operating accounts.

122.    Upon information and belief, during the two (2) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Industries in the aggregate sum of no less than $904,339.14 (the "Industries Fraudulent Transfers").

123.    Hauling did not receive reasonably equivalent value in exchange for the Industries Fraudulent Transfers.

124.    Hauling was insolvent at the time of the Industries Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

125.    Alternatively, at the time of the Industries Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

126.    The Industries Fraudulent Transfers are avoidable pursuant to U.S.C. § 548.

127.    Alternatively, in the event the Industries Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 548, they are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, as more fully alleged in Count IX below.

128.    Industries was the initial transferee of the Industries Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Fraudulent Transfers were made.

129.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Fraudulent Transfers, in the respective aggregate sums of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

130.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays to Hauling an amount equal to the aggregate amount of the avoidable Industries Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant KLT INDUSTRIES, INC.: (a) Avoiding the Industries Fraudulent Transfers (as defined herein) in the amount of $904,339.14 pursuant to 11 U.S.C. § 548; (b) Ordering that all avoided Industries Fraudulent Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 548, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by Industries and/or its assignee(s) until Industries satisfies the judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Industries Fraudulent Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs; (f)

Requiring Industries to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

**COUNT IX**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 544 AND TO DISALLOW CLAIMS DIRECTED AT**
**DEFENDANT KLT INDUSTRIES, INC.**

131.    Hauling repeats and realleges paragraphs 1 through 130 of this First Amended Complaint as though fully set forth in this Count IV.

132.    At various times, and from time to time, Hauling made transfers of money to Industries.

133.    The transfers from Debtor to Industries were in the form of, among other things, checks drawn from Hauling's operating accounts.

134.    Upon information and belief, during the four (4) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Industries in the aggregate sum of no less than $904,339.14 (the "Industries Fraudulent Transfers").

135.    Hauling did not receive reasonably equivalent value in exchange for the Industries Fraudulent Transfers.

136.    Hauling was insolvent at the time of the Industries Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

137.    Alternatively, at the time of the Industries Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small

capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

138.    The Industries Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*

139.    Alternatively, in the event the Industries Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, they are avoidable pursuant to 11 U.S.C. § 548 as more fully alleged in Count VIII above.

140.    Industries was the initial transferee of the Industries Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Fraudulent Transfers were made.

141.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Fraudulent Transfers, in the respective aggregate sums of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

142.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays to Hauling an amount equal to the aggregate amount of the avoidable Industries Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against Defendant KLT INDUSTRIES, INC.: (a) Avoiding the Industries Fraudulent Transfers (as defined herein) in the amount of $904,339.14 pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*; (b)

Ordering that all avoided Industries Fraudulent Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by Industries and/or its assignee(s) until Industries satisfies the judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Industries Fraudulent Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs; (f) Requiring Industries to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

**COUNT X**
**AVOIDANCE AND RECOVERY OF POSTPETITION TRANSFERS AND TO DISALLOW CLAIMS DIRECTED AT THE KLT PARTIES**

143.    Hauling repeats and realleges paragraphs 1 through 142 of this First Amended Complaint as though fully set forth in this Count X.

144.    The KLT Parties conducted business with Hauling through and including the Petition Date.

145.    Following the Petition Date, Hauling continued to operate its business affairs as a debtor in possession, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including, upon information and belief, one or more of the KLT Parties.

146.    Upon information and belief, Hauling made post petition transfers of its property to or for the benefit of the KLT Parties ("Post Petition Transfers").

147.    These Post Petition Transfers were made post petition on account of a pre-petition obligation or obligations of Hauling to one or more of the KLT Parties.

148.    These Post Petition Transfers were not authorized by the Bankruptcy Code or by the Bankruptcy Court.

149.    During the course of this adversary proceeding, Hauling may learn of additional transfers made to one or more of the KLT Parties.  It is Hauling's intention to avoid and recover all avoidable or otherwise unauthorized transfers made by Hauling of an interest in Hauling's property and to or for the benefit of the KLT Parties or any other transferee.  Hauling reserves its right to amend this First Amended Complaint to include further information regarding the Post Petition Transfers, any additional transfers, modifications or revisions to the names of the KLT Parties and transferees, additional defendants, and/or additional causes of action (including, but not exclusively under, 11 U.S.C. §§ 502, 544, 545, 547, 548, 549 and/or 550), that may become known to Hauling (collectively, the "Amendments"), and for such Amendments to relate back to this First Amended Complaint.

150.    In accordance with the foregoing, the Post Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

151.    Further, the KLT Parties were the initial transferee of their respective Post Petition Transfers, or the immediate or mediate transferee or the person for whose benefit the Post Petition Transfers were made.

152.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from the KLT Parties, all Post Petition Transfers, in their respective aggregate sums, plus interest thereon to the date of payment, and the costs of this action.

153.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of the KLT Parties and/or their assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as the KLT Parties pay to Hauling an amount equal to the aggregate amount of their respective avoidable Post Petition Transfers, plus interest thereon and costs.

WHEREFORE, NATURE'S SECOND CHANCE HAULING, LLC, respectfully requests and prays that this Court enter its Order and Judgment against the KLT Parties (as defined herein): (a) Avoiding the Post Petition Transfers (as defined herein) in an amount to be determined at trial, pursuant to 11 U.S.C. § 549; (b) Ordering that all avoided Post Petition Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 549, be recovered by Hauling pursuant to 11 U.S.C. § 550; (c) Disallowing, in accordance with 11 U.S.C. § 502(d) and (j) any Claims held by the KLT Parties and/or their assignee(s) until the KLT Parties satisfy their respective judgment; (d) Awarding pre-judgment interest at the maximum legal rate running from the date of each Post Petition Transfer to the date of judgment herein; (e) Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs; (f) Requiring the KLT Parties to pay forthwith the judgment amount awarded in favor of Hauling; and (g) Granting Hauling such other and further relief as the Court deems just and reasonable.

HEPLERBROOM, LLC

By:   /s/ Steven M. Wallace
          Steven M. Wallace – 06198917
          Amanda R. McQuaid – 6324336
          130 North Main Street
          Edwardsville, Illinois 62025
          Direct:  (618) 307-1185
          Fax:  (618) 656-1364
          Email:  steven.wallace@heplerbroom.com

          Counsel to Nature's Second Chance Hauling

**<u>Certificate of Service</u>**

      The undersigned certifies that a true and correct copy of the foregoing was served electronically this 7th day of June 2018, on all persons on the Court's CM/ECF notice list.

          /s/ Steven M. Wallace