## MANAGEMENT AGREEMENT

**THIS MANAGEMENT AGREEMENT** (this "**Agreement**") is made and entered into effective as of January 12, 2017 (the "**Effective Date**"), by and among (i) **NATURE'S SECOND CHANCE HAULING, LLC**, a Missouri limited liability company with an address of 2410 State Street, Alton, IL 62002 ("**NSCH**"), (ii) **NATURES SECOND CHANCE LEASING, LLC**, a Delaware limited liability company with an address of 2410 State Street, Alton, IL 62002 ("**NSCL**" and collectively with NSCH, "**Nature**"), (iii) **J. THOMAS LONG**, an individual with an address of [_____] ("**Long**"), (iv) **VERN VAN HOY**, an individual with an address of [_____] ("**Van Hoy**" and collectively with Long, the "**Members**"), and (v) **GROUPKLT, INC.**, a Delaware corporation with an address of 33 Boston Road West, Suite 501 Marlborough, MA 01752 ("**KLT**").

**THE BACKGROUND OF THIS AGREEMENT IS THAT:** Nature has solicited KLT to provide Management Services (defined below) to Nature; and KLT is willing to provide Management Services to Nature on the terms set forth in this Agreement; and the parties hereto wish to state the terms of the Management Services to be provided by KLT pursuant to, and in accordance with, the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants set forth herein, the receipt and sufficiency of which hereby is acknowledged, the parties hereby agree as follows:

1. **Management Services.**

    a) KLT shall provide all business management services for Nature (collectively, "**Management Services**"), which, by way of example, (but not limitation) shall specifically include the following:

    i) day-to-day decision-making, management and execution with respect to all business operations, revenue management, marketing, and sales;

    ii) personnel decisions including all hiring, firing, compensation and severance determinations, including those relevant to any officers of Nature and any management staff that may exist as of the Effective Date or as may be implemented by KLT thereafter;

    iii) strategic, planning and legal decision-making for the Term (as hereinafter defined) and periods thereafter;

    iv) all decision-making and authority regarding contracts and agreements with third-parties and the formation of same, including negotiations, contracting, performance, and termination of same;

    v) engagement and implementation of back office and support services and expertise related thereto;

vi) arranging locations from which Management Services may be rendered (provided that KLT shall be responsible for any costs payable by Nature that are directly attributable to the foregoing);

vii) financing and cash flow associated with Nature's business operations, including the authority to bind Nature under indentures, instruments and contracts in connection therewith; and

viii) preparing tax filings, financial statements, regulatory responses, and any other documentation, of any nature, that may be germane to Nature's operations and dealings, together with the right to file, submit, or distribute any of the foregoing on behalf of Nature as KLT may see fit in its sole and absolute discretion, and (at Nature's cost) engaging any professional service provider that may be necessary or desirable by KLT to effectuate any of the foregoing.

b) The "Management Services" shall not include any legal, tax or accounting advice or services or any similar advice or services, to Nature or the Members, who shall procure any such services at their own expense. Under no circumstances will KLT be obligated to provide any working capital or loans to Natures or Members. KLT may elect to deliver some or all Management Services, in whole or in part, through contractors, or sub-contractors, including through KLT's own officers, employees, contractors, and sub-contractors.

c) As consideration for KLT's provision of Management Services, Nature shall deliver to KLT (or its assigns) the "KLT Rights & Remuneration" described in Section 4.

2. **Management Team Appointment**. Within ten (10) business days after the Effective Date, KLT shall take action on appointing new executive management of Nature, including but not limited to a Chief Executive Officer and a Chief Financial Officer. Without in any way limiting the scope of Management Services or KLT's authority hereunder, KLT may take any action necessary to appoint, reappoint, terminate or otherwise remove existing management of Nature to effectuate the provisions of this Section 2.

3. **Term**. This Agreement shall have a term of eighteen (18) months from the Effective Date (the "**Term**"), unless earlier terminated in accordance with its terms.

4. **KLT Rights & Remuneration**. As consideration for the Management Services to be provided hereunder, Nature hereby agrees to pay KLT the remuneration described in Section 4(a) below and hereby unconditionally and irrevocably transfers and assigns to KLT the rights described in Section 4(b) below:

a) Nature shall pay KLT a management fee (the "**Management Fee**") in the amount of Two Hundred Thousand Dollars ($200,000.00) per year, payable in biweekly installments in advance commencing on the Effective Date. Upon KLT's appointment of a new Chief Financial Officer, pursuant to Section 2 above, the Management Fee shall be increased to the amount of Four Hundred Thousand Dollars ($400,000.00) per year (on a pro-rated basis), payable in biweekly installments.

2

b) As of the Effective Date, Nature hereby unconditionally and irrevocably transfers and assigns to KLT (or its shareholder(s), in KLT's sole discretion) an option to acquire all of the limited liability company interests or assets of Nature in a form of transaction or series of transactions, and using such entity or entities, as may be determined by KLT in its sole discretion (the "**Option**") subject to sub-paragraph 4c below., provided that the exercise of the Option results in the Members' receiving a forty percent (40%) equity ownership interest in the entity or entities that are the result of the combination KLT and Nature (such entity or entities are hereinafter collectively referred to as "**Holdco**") (with the assets listed on **Exhibit A** [attached hereto and made apart hereof] not included in Holdco). KLT may exercise the Option by written notice provided to Nature and the Members at any time during the Term, and KLT shall have a period of ninety (90) days after such notice to consummate the transaction or series of transactions effecting the exercise of the Option. Upon exercise of the Option, this Agreement shall terminate on a date to be determined by KLT, notice of which shall be provided to Nature in writing. To the extent permissible by law, KLT shall structure the combination such that the entity or entities shall be a pass-through entity or entities for US federal and state income tax purposes. Holdco's governing documents shall provide or facilitate, at a minimum, the following:

  i) Cash distributions on a quarterly basis sufficient to allow equity owners to make income tax estimated payments on federal and state income taxes due on Holdco's taxable income;

  ii) There shall be established a board of directors, or a board of managers, or an equivalent governance structure for the relevant form or forms of entity for Holdco (a "**Governing Body**") having not fewer than five (5) members, to which each of the Members shall have the right to appoint one member of such Governing Body and the remaining members of such Governing Body shall be elected by the majority vote of the equity holders of Holdco, provided, however, the right of the Members to appoint any such membership shall be personal in nature to the Members, and shall not be transferable or assignable in connection with the Members' respective equity interests;

  iii) Commencing upon the end of the Term, Holdco shall provide for minimum pro rata distributions to equity owners of an amount totaling $1,500,000 per annum, to be paid in monthly installments, with the form and circumstances of such payments to be determined by KLT in its sole discretion.;

  iv) Each equity holder in Holdco shall have a right, exercisable upon any equity holder's attempt to pledge, sell, encumber or otherwise transfer (each, a "**Transfer**") his equity interest, to purchase such equity holder's pro rata share, exercisable within thirty (30) days after written notice of such proposed Transfer, and if the other equity holders do not purchase all of the equity proposed to be Transferred, Holdco shall have a right to purchase any such remaining equity proposed for Transfer;

  v) If a majority of equity holders propose to enter into a transaction to Transfer their equity interests, or enter into a business combination, or sell all or substantially all of the assets

3

of Holdco (whichever, a "**Transaction**"), then, unless a right described in Section 4(b)(iv) above has been exercised, all equity holders shall be required to approve and execute upon such Transaction, and shall execute powers of attorney binding upon them to approve and participate in such Transaction;

vi) If any equity holder wishes to Transfer his equity interest, he shall notify all other equity holders, and unless either of the rights described in Section 4(b)(iv) or Section 4(b)(v) above is exercised as to such equity interest, then all other equity holders shall be entitled to participate pro rata on the same terms in such Transfer;

vii) A supermajority vote by the owners of not less than sixty-six and two-thirds percent (66 2/3%) of all equity interests in Holdco shall be required for the following actions:
  (1) Any proposed borrowing that will increase the guaranteed obligations of Members by more than five percent (5%) of such obligations as exist as of the Effective Date; and
  (2) Any proposed merger, sale or reorganization of Holdco (except as otherwise provided herein).

~~viii)~~ Provisions for ~~In~~ the ~~event of~~ death, disability or determination of legal incapacity of any equity holder, ~~Holdco shall have the right to acquire such equity holder's equity interest at a purchase price per equity unit calculated based upon such equity holder's percentage equity interest times two hundred percent (200%) of Holdco's EBITDA for Holdco's most recently completed 12-month period. Holdco may pay such purchase price by delivery to such equity holder (or their heirs, successors, or assigns) Holdco's unsecured promissory note payable in equal annual installments of principal over a term of not less than seven (7) years, together with interest thereon at the prime rate as reported in *The Wall Street Journal*. As used in this section, "disability" shall have the meaning defined in the Internal Revenue Code, and it shall be a condition of any acquisition based on an equity holder's disability that such equity holder must agree to execute a non-competition agreement for the term of such promissory note, in a form reasonably required by Holdco.~~

c) ~~The aforementioned Option is subject to the Parties' entering into a mutually binding agreement to be executed prior to February 16, 2017, and no operations of Nature will be transitioned~~ The Option referred to above is subject to and contingent upon the Parties entering into a mutually binding Definitive Agreement together with all usual and customary related governing documents acceptable to all Parties prior to February 16, 2017 upon which date the Option shall expire and have no legal effect. No operations of Nature will be transitioned to any KLT location prior to the execution of the Definitive Agreement.

5. **Member Compensation**. During the Term, KLT agrees that Nature shall pay to the Members the following amounts, either as salary or as consulting fees, as determined by KLT in its sole discretion, to be payable in equal monthly installments, less any applicable withholdings and other payroll deductions:

4

**EXHIBIT A**

   a) Long shall receive an amount equal to $300,000 per year (pro-rated for partial years of service).

   b) Van Hoy shall receive an amount equal to $300,000 per year (pro-rated for partial years of service).

The Members shall have no involvement in day-to-day operations of Nature.

6. **Existing Member Loan Repayment.** During the Term, Nature shall use commercially reasonable efforts repay the following outstanding loans made to Nature by the Members (collectively, the "**Existing Member Loans**") in the same order of priority as provided herein:

   First:   Three Hundred Thousand and 00/100 Dollars ($300,000.00) to Long;

   Second:  One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000.00) to Long; and

   Third:   One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00) to Long and $ 125,000.00 to Van Hoy.

Such repayment of the Existing Member Loans ("**Member Loan Repayment**") may be made in one or more payments, from time to time, in amounts and frequency to be determined in KLT's reasonable judgment.

Notwithstanding the foregoing, such Member Loan Repayment shall be contingent upon each of the following conditions being satisfied at any given time:

   (i)   Such Member Loan Repayment shall not violate any agreement with any third-party to which Nature may be bound which prohibits such payment, including but not limited to any Existing Financing (as hereinafter defined);

   (ii)  Such Member Loan Repayment shall not violate the terms of Nature's bylaws or any other constituent document of Nature;

   (iii) Such Member Loan Repayment shall not violate any law, regulation or order then in effect and binding upon Nature; and

   (iv)  KLT shall reasonably determine that Nature has sufficient cash flow and/or reserves available to make any payment to Members contemplated as a Member Loan Repayment.

7. **Representations and Warranties.**

   a) KLT represents, warrants, covenants and agrees that:

5

i) KLT has the authority to enter into and to perform this Agreement, to execute and deliver all documents relating to this Agreement, and to incur the obligations provided for in this Agreement.

ii) This Agreement constitutes the valid and legally binding obligation of KLT in accordance with its terms.

iii) KLT is a valid corporation, duly organized under the laws of the State of its formation, shall be qualified to do business and shall have full power and authority to provide, and otherwise comply with and perform its obligations and duties under this Agreement.

b) Each of NSCH, NSCL, Long and Van Hoy represents, warrants, covenants and agrees that:

i) Each has the authority to enter into and to perform this Agreement, to execute and deliver all documents relating to this Agreement, and to incur the obligations provided for in this Agreement.

ii) This Agreement constitutes the valid and legally binding obligations of each in accordance with its terms.

iii) NSCH and NSCL are valid limited liability companies, duly formed under the laws of the respective states of their formation, are qualified to do business in all states in which they are currently conducting business, and have full power and authority to provide, and otherwise comply with and perform, their obligations and duties under this Agreement.

iv) The Members are the sole legal and beneficial owners of each of NSCH and NSCL.

v) Other than the Option granted under this Agreement, and the remedies granted under any financing agreements with any Existing Financing with an Existing Lender (as each is defined herein) existing as of the Effective Date, no other options or rights exist by which any other person or entity may acquire any interest in the assets or ownership of NSCH or NSCL, and each of the Members, NSCH and NSCL covenants that he or it shall not grant any such option or right to any person or entity during the Term without the written consent of in advance of KLT, which consent may be withheld in KLT's sole discretion.

8. **Default**.

a) The occurrence of any of the following events shall be a breach by KLT of this Agreement, entitling Nature to the remedies set forth in Section 9:

i) Any Existing Financing of Nature is not paid per its terms or within ten (10) days thereafter. "**Existing Financing**" shall mean those financing instruments and agreements evidencing certain debts owed by Nature as of the Effective Date to the following entities (hereinafter collectively referred to as "**Existing Lenders**"):

6

    (1) First National Bank of Staunton in the approximate amount of $ 3,768,000;

    (2) Equipment financing with The Bank of Rantoul in the approximate amount of $3,750,722;

    (3) Tractor Truck financing with Daimler Finance in the amounts of (A) $1,505,002, (B) $2,443,955, and (C) $3,174,664;

    (4) Caterpillar Finance Co. in the amount of $369,214;

    (5) Capital Lease with Arch Trailer in the amount of $158,765; and

    (6) Capital Lease with Xtra Lease in the amount of $812,250; or

ii) General Liability and Workman Compensation Insurance are allowed to lapse due to KLT's actions or failure to act, which lapse is the proximate cause of an event of default under any Existing Financing which results in a termination of such Existing Financing, or which results in any fine or penalty issued by a governmental body with direct regulatory oversight over Nature's operations in an amount in excess of $75,000; or

iii) Accounts payable shall exceed $500,000 or average more than sixty (60) days past due unless there is a bona fide dispute related to a particular account or accounts; or

iv) KLT's participation in any theft, embezzlement or defalcation of any assets of Nature; or

v) KLT fails to pay the then-current payroll of Nature in accordance with relevant state law; or

vi) KLT moves any operating account of Nature without first obtaining any requisite consent from an Existing Lender and is the proximate cause of an event of default under any Existing Financing which results in the termination of such Existing Financing; or

vii) KLT knowingly causes any commingling of funds between Nature and KLT; or

viii) KLT incurs any debt in excess of $75,000 for the account of Nature outside the normal course business without the consent of the Members, under any credit facility, financing arrangement or vendor account which does not exist as of the Effective Date; or

ix) KLT fails to perform its obligations under Section 6 with respect to the repayment of Existing Member Loans; or

x) KLT sells assets of NSCL outside the normal course of business without the consent of the Members.

7

Nature may not pursue any remedy for a breach by KLT without first notifying KLT in writing of the breach and providing KLT an opportunity to cure such breach (if such breach is susceptible of cure) for a period of not fewer than fifteen (15) days.

b) The occurrence of any of the following events shall be a breach by Nature of this Agreement, entitling KLT to the remedies set forth in Section 9:

   i) Any representation, warranty, covenant, or agreement of Nature provided for under Section 7 of this Agreement is breached by Nature, or proves false or materially misleading; or

   ii) Any failure to perform any of the other covenants, agreements and obligations of Nature provided under this Agreement; or

   iii) Any material breach or default under any other agreement between Nature and KLT.

9. **Termination Rights and Other Remedies**.

   a) Expiration of Term. If not sooner terminated, this Agreement shall terminate on the expiration of its Term set forth in Section 3, or at any time on or after February 16, 2017, ~~at either parties sole option, with 90 day prior notice~~ at either parties sole option with 90 days written notice, if the mutually binding agreement described in Section 4(c) is not entered into by the Parties prior to February 16, 2017.

   b) Termination By Nature Upon KLT's Breach. If a breach described in Section 7 by KLT is not timely cured as provided in Section 7, Nature may terminate this Agreement by notifying KLT in writing of such termination, effective as of a date designated by Nature that is not sooner than the date such notice is provided to KLT. The foregoing right of termination shall be Nature's exclusive remedy in the event of any breach by KLT and Nature hereby waives any right to legal or equitable relief that may be available in connection therewith.

   c) Termination By KLT Without Cause. Even in the absence of any other express right to terminate this Agreement, KLT may terminate this Agreement at any time, not fewer than ninety (90) days after providing written notice to Nature.

   d) Termination by KLT Upon Nature's Breach. If a breach described in Section 8 by Nature is not timely cured as provided in Section 8, KLT may terminate this Agreement by notifying Nature in writing of such termination, effective as of a date designated by KLT that is not sooner than the date such notice is provided to Nature. Upon the termination of this Agreement by KLT hereunder, KLT shall be entitled to reimbursement from Natures for all reasonable and foreseeable actual costs incurred by KLT in connection with KLT's provision of Management Services hereunder, provided such costs exceed any Management Fee paid as of the date of such termination. For the purpose of clarity, the foregoing reimbursement obligation shall survive the termination of this Agreement.

8

records of Nature as may be necessary or desirable to facilitate KLT's provision of Management Services hereunder; provided, however, all such reproductions shall be returned to Nature upon any termination of this Agreement that is not predicated upon the exercise of the Option.

11. **Obligations of Nature and the Members**. Nature and the Members shall cooperate with KLT and shall make available to KLT such personnel, documents and other information as KLT shall reasonably request in connection with KLT's performance of Management Services. The Members shall inform KLT of (a) any material changes that arise after delivery of any such information and that may affect KLT's use of, or reliance on, such information or (b) any material inaccuracy or misstatement in, or material omission from, any information delivered to KLT, as soon as a Member becomes aware thereof. The Members represent and warrant to KLT that, to the best of Members' knowledge and belief: (a) all information provided or otherwise made available to KLT by or on behalf of the Members shall be complete and correct in all material respects and shall not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made, and (b) any projections provided by it to KLT shall have been reasonably prepared in good faith and shall be based upon the best then available estimates and judgments of the future financial results and condition of Nature and assumptions, which, in light of the circumstances under which they are made, the Members believe to be reasonable, without information that would cause the Members to question the accuracy or reliability of same. The Members acknowledge that in rendering Management Services, KLT shall be using and relying on the information provided by and on behalf of the Members without independent verification by KLT. KLT assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of Nature or the Members or any other information regarding nature provided or otherwise made available to KLT.

12. **Company Ratification**. The Board of Directors of NSCH and NSCL, respectively, shall take any and all requisite limited liability company action to duly authorize, approve and effectuate any Management Services rendered by KLT hereunder.

13. **Indemnification**. Nature shall indemnify, defend and hold harmless KLT, various related entities and their controlling persons, representatives and agents pursuant to the indemnification provisions attached to this Agreement as **Exhibit B**, which are incorporated as provisions of this Agreement by this reference.

14. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts. In the event that there is any disagreement regarding the terms or otherwise respecting the subject matter hereof, each of the parties hereto hereby consents to the exclusive jurisdiction of the state or federal courts located in the County of Hartford, State of Connecticut, and agrees that any action concerning a dispute arising out of or relating to this Agreement shall be brought in any such court.

15. **No Other Agreements**. This Agreement, including its exhibits and/or schedules, contains the entire agreement between the parties pertaining to the subject matter hereof and fully

supersedes all prior written or oral agreements and understandings between the parties pertaining to such subject matter.

16. **Severability**. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall nonetheless remain in full force and effect provided that the terms and provisions material to each party hereunder remain unaffected or impaired thereby.

17. **Counterparts**. This Agreement may be executed in counterparts, and all such executed counterparts shall constitute the same agreement. It shall be necessary to account for only one such counterpart in proving this Agreement.

[*no further text on this page- signature page follows*]

10



**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

GROUPKLT, INC.

By: _____
John McKenna, President

NATURE'S SECOND CHANCE HAULING, LLC

By: _____
J. Thomas Long, Member

By: _____
Vern Van Hoy, Member

NATURES SECOND CHANCE LEASING, LLC

By: _____
J. Thomas Long, Member

By: _____
Vern Van Hoy, Member

_____
J. THOMAS LONG, individually

_____
VERN VAN HOY, individually

11

**EXHIBIT A**

## Exhibit A

List of Assets Not included in the Assets held by the Entity or Entities
that are the result of the combination KLT and Nature

1. Poitras Real Estate Trust

2. Boston Baler & Hydraulics, Inc.

3. KLT Realty Trust

4. Alexander Industrial Technologies, Inc.

5. 242 Neck Road Realty Trust

6. Spafco Race Chassis, Inc.

7. Winchester Trading Company

8. Hemmingson Enterprises, Inc.

9. Lake Fabrication & Hydraulic Repair, Inc.

10. aprilon Homes [initialed]

12

[signatures/initials]

### Exhibit B

### INDEMNIFICATION PROVISIONS

These indemnification provisions are incorporated into the Management Agreement dated January [__], 2017, between by and among (i) **NATURE'S SECOND CHANCE HAULING, LLC**, a Missouri limited liability company with an address of 2410 State Street, Alton, IL 62002 ("**NSCH**"), (ii) **NATURES SECOND CHANCE LEASING, LLC**, a Delaware limited liability company with an address of 2410 State Street, Alton, IL 62002 ("**NSCL**" and collectively with NSCH, the "**Nature**"), (iii) **J. THOMAS LONG**, an individual with an address of [_____] ("**Long**"), (iv) **VERN VAN HOY**, an individual with an address of [_____] ("**Van Hoy**" and collectively with Long, the "**Members**"), and (v) **GROUPKLT, INC.**, a Delaware corporation with an address of 33 Boston Road West, Suite 501 Marlborough, MA 01752 ("**KLT**"). Terms used and not defined in these indemnification provisions have the definitions assigned to them in the Agreement.

(i) <u>Indemnification</u>. To the fullest extent lawful, Nature shall indemnify and hold harmless KLT, and each affiliate, partner, director, officer, employee, agent, member and controlling person of KLT (KLT and any or all of the foregoing are referred to in these indemnification provisions as an "**Indemnified Person**"), from and against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including expenses, fees and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several) (collectively, "**Losses**"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute, including security holder actions (regardless of whether KLT or any other Indemnified Person is a potential or actual named party or witness) (each, a "**Claim**"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to KLT or any other person by or on behalf of Nature or used by Nature in connection with the Management Services or any omission or alleged omission by or on behalf of Nature to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of KLT's Management Services, role, activities or the performance or non-performance of Management Services on Nature's behalf. Nature shall not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence that are judicially determined to have resulted primarily from the gross negligence or willful misconduct of any Indemnified Person seeking indemnification under these indemnification provisions; however, pending any such judicial determination, the indemnification obligations of Nature under these indemnification provisions shall continue to apply and Nature shall be obligated to reimburse each Indemnified Person for all expenses incurred by such Indemnified Person in connection with the subject Claim. Neither KLT nor any Indemnified Person shall have any liability to Nature, its owners, parents, creditors or security holders for or in connection with the Management Services, except for liability, if any, for Losses actually incurred by Nature that are judicially determined to have resulted primarily and directly from KLT's gross negligence or willful misconduct. For purposes of the foregoing, "judicially determined" means determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

13

(ii) <u>Proceedings</u>. KLT shall notify Nature if it becomes aware that any investigation, lawsuit, administrative proceeding or self-regulatory organization proceeding has been instituted based, directly or indirectly, on any transactions which were the subject of the Management Services, although failure to do so shall not relieve Nature from any obligation or liability it has under these Indemnification Provisions or otherwise, except to the extent any such failure relating to an investigation, lawsuit or proceeding of which KLT had become aware causes Nature to forfeit substantial rights and defenses. If any investigation, lawsuit, administrative proceeding or self-regulatory organization proceeding (any such investigation, lawsuit or proceeding, a "**Proceeding**") is formally instituted against KLT or any Indemnified Person based, directly or indirectly, on the Management Services, Nature shall be entitled to participate in such Proceeding and, to the extent that it may wish, to assume the defense of such Proceeding, with counsel reasonably satisfactory to KLT, so long as Nature continues to pay all costs and expenses of the defense and preparation for such Proceeding. Even if Nature assumes the defense of a Proceeding, each Indemnified Person shall have the right to participate in the Proceeding and to retain its own counsel at such Indemnified Person's own expense. Each Indemnified Person shall also have the right to employ its own counsel in any Proceeding and to require Nature to pay all reasonable fees and expenses of such counsel as they are incurred if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are different from or additional to defenses available to Nature (in which case Nature shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Person), (2) Nature has not assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Person in a timely matter or (3) Nature has authorized the employment of such counsel in connection with the defense of the Proceeding.

(iii) <u>Contribution</u>. If any indemnification sought by an Indemnified Person pursuant to the terms of these Indemnification Provisions is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the willful misconduct of any such Indemnified Person) or is insufficient to hold such Indemnified Person harmless, then Nature, on the one hand, and KLT, on the other hand, shall contribute to the Losses for which such indemnification is held unavailable or is insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the Management Services by Nature, on the one hand, and the Indemnified Person, on the other hand, in connection with the Management Services (regardless of whether any transaction contemplated by the Management Services is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the Management Services by Nature, on the one hand, and the Indemnified Person, on the other hand, but also the relative fault of Nature and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitations that (a) the contribution by KLT shall not exceed the amount of fees actually received by KLT pursuant to the Management Services and (b) no contribution by KLT shall be required where the corresponding proportionate amount of any such contribution has not been actually contributed by Nature. No person found liable for fraud or fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraud or fraudulent misrepresentation.

(iv) <u>Settlement of Claims</u>. Nature shall not, without the prior written consent of KLT, which consent shall not be unreasonably withheld, settle or compromise or consent to the entry

14

of any judgment, or permit any settlement, compromise or consent to the entry of any judgment, in any pending or threatened Claim or Proceeding in respect of which indemnification could be sought under these Indemnification Provisions (regardless of whether KLT or any Indemnified Person is an actual party to such Claim or Proceeding) unless such settlement, compromise or consent includes provisions holding harmless and unconditionally releasing KLT and each other Indemnified Person from all actual and potential liability related to or arising out of such Claim or Proceeding, including claims for contribution. Nature shall not be liable for any settlement of any Claim effected by KLT without its written consent.

(v)     Miscellaneous. The obligations of KLT are solely corporate obligations. No director, officer, employee, agent, shareholder or controlling person of KLT shall be subjected to any liability to any person, nor shall any claim asserting otherwise be asserted by or on behalf of any other party to the Agreement. Nature's indemnity, reimbursement and contribution obligations expressed in these Indemnification Provisions shall: (1) be in addition to any liability that Nature otherwise may have to KLT or any Indemnified Person and any rights that KLT or any Indemnified Person may have at common law or otherwise; (2) survive the completion or termination of the Management Services or the Agreement; (3) apply to any activities before, on or after the date of the Agreement and any amendment, modification or future addition to the Management Services; and (4) inure to the benefit of the heirs, personal representatives, successors, and assigns of KLT and each other Indemnified Person.

ACTIVE/78689.1/MCECCORULLI/6301463v9

15