## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

In re:

NATURE'S SECOND CHANCE
HAULING, LLC,

     Debtor.

                                  In proceedings under Chapter 11

NATURE'S SECOND CHANCE
HAULING, LLC,                        Bk. No. 18-30328

     Plaintiff,                     Adv. No. 18-03016

vs.

GROUPKLT, INC., KLT LOGISTICS, INC.,
KLT TRANSPORT, LLC, and KLT
INDUSTRIES, INC.,

     Defendants.

## DEFENDANTS' ANSWER TO PLAINTIFF'S
## FIRST AMENDED COMPLAINT
## FOR ACCOUNTING, TURNOVER, PRELIMINARY AND
## PERMANENT INJUNCTIVE RELIEF, BREACH OF FIDUCIARY DUTY,
## TO AVOID AND RECOVER TRANSFERS, AND TO
## <u>DISALLOW CLAIMS AND AFFIRMATIVE DEFENSES</u>

Defendants GroupKLT, Inc., KLT Logistics, Inc., KLT Transport, LLC, and KLT Industries, Inc. (collectively, the "KLT Parties"), by and through their attorneys, Howard & Howard Attorneys PLLC, respond to Nature's Second Chance Hauling, LLC's ("Plaintiff" or "Hauling") First Amended Complaint for Accounting, Turnover, Preliminary and Permanent Injunctive Relief, and to Avoid and Recover Transfers (the "Complaint") as follows:

### <u>Parties, Jurisdiction and Venue</u>

1.     Hauling is a limited liability company organized under the laws of the State of Missouri with its principal place of business in Alton, Illinois.

**ANSWER:**

Admitted.

2.      On March 19, 2018, Hauling filed its voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"), and has since been managing its financial affairs as a Debtor in Possession.

**ANSWER:**

Admitted.

3.      GROUPKLT, Inc. ("Group") is a Delaware corporation with its principal place of business in Marlborough, Massachusetts.

**ANSWER:**

Admitted.

4.      KLT Logistics, Inc. ("Logistics") is a Delaware corporation with its principal place of business in Marlborough, Massachusetts.

**ANSWER:**

Admitted.

5.      KLT Transport, LLC ("Transport") is a Connecticut limited liability company with its principal place of business in Woodstock, Connecticut.

**ANSWER:**

Admitted.

6.      KLT Industries, Inc. ("Industries") is a Rhode Island corporation with its principal place of business in Chepachet, Rhode Island. Group, Logistics, Transport, and Industries are sometimes referred to collectively herein as the "KLT Parties."

**ANSWER:**

Admitted.

7.     The Court has jurisdiction over this adversary proceeding, and the relief requested herein pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105, 541, 542, 544, 547, 548, 549, 502, and 550.

**ANSWER:**

For their response to paragraph 7 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

8.     This adversary proceeding is a "core" proceeding within the contemplation of 28 U.S.C. § 157(b)(2).

**ANSWER:**

For their response to paragraph 8 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

9.     Hauling consents to entry of a final order and judgment by the United States Bankruptcy Court for the Southern District of Illinois.

**ANSWER:**

For their response to paragraph 9 of the Complaint, the KLT Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

10.    Venue of this adversary proceeding is appropriate in the United States Bankruptcy Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1409(a).

**ANSWER:**

For their response to paragraph 10 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

**Factual Background**

11.    Hauling is a trucking company specializing in picking up recyclable paper, such as cardboard, and delivering it to paper mills for the purpose of recycling into new boxes and similar paper/cardboard items.

**ANSWER:**

4832-3784-7404, v. 3

For their answer to paragraph 11 of the Complaint, the KLT Parties admit that at one time Hauling was a trucking company specializing in picking up recyclable paper, such as cardboard, and delivering it to paper mills for the purpose of recycling into new boxes and similar paper/cardboard items. Further answering, the KLT Parties deny any remaining allegations contained in that paragraph.

12.     Hauling's major customers are Waste Management, International Paper, Georgia Pacific and WestRock. Those companies contract with Hauling to pick up bales of cardboard and plastic at large retailers such as Wal-Mart, Home Depot, Lowes, and similar retail establishments. Once Hauling picks up the bales, it delivers them to customers who then recycle the delivered product.

**ANSWER:**

For their response to paragraph 12 of the Complaint, KLT Parties admit that when Hauling was operating, its customers included one or more of the KLT Parties, Waste Management, International Paper, Georgia Pacific, and WestRock. Further answering, the KLT Parties state that at that time, Hauling would provide the services described in that paragraph. Further answering, the KLT Parties deny any remaining allegations contained in that paragraph.

13.     Hauling operated in 25 states and had a fleet of 150 trucks and Bobcats. Hauling had 300 employees. Hauling leased its vehicles from commercial leasing companies and from a related entity: Nature's Second Chance Leasing, LLC ("Leasing", occasionally referred to collectively herein with Hauling as "NSC").

**ANSWER:**

For their response to paragraph 13 of the Complaint, the KLT Parties admit that when Hauling operated, it did so in numerous states with many employees and leased vehicles from commercial leasing companies and Leasing, but, further answering, states that they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in that paragraph and, therefore, deny same.

14.     Hauling expended substantial sums in developing its customer base and acquiring (through Leasing) the equipment necessary to service its customers and generate revenue.

4

**ANSWER:**

For their response to paragraph 14 of the Complaint, the KLT Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

15.     On January 13, 2017, Group, Hauling, Leasing, and the then-members of Hauling and Leasing, Vern Van Hoy and J. Thomas Long, entered into a Management Agreement, under which Group agreed to undertake management of the day-to-day operations of Hauling's and Leasing's business operations and financial affairs. A true and correct copy of the Management Agreement is attached hereto as **Exhibit A**.

**ANSWER:**

For their response to paragraph 15 of the Complaint, the KLT Parties admit that on or about January 13, 2017, Nature's Second Chance Hauling, LLC, Nature's Second Chance Leasing, LLC, J. Thomas Long, Vern Van Hoy, and GroupKLT, Inc. entered into a Management Agreement (the "2017 Management Agreement") under which the parties agreed to various obligations, including the provision of management services, all as set forth in that 2017 Management Agreement and a copy of that Agreement is attached to the Complaint as Exhibit A, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

16.     Subject to adjustment in Section 4 of the Management Agreement, Group was to receive compensation in the sum of $200,000.00 per year, and it further obtained an option to acquire all of the membership interests in or assets of NSC.

**ANSWER:**

For their response to paragraph 16 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains provisions regarding compensation and purchase options in Nature's Second Chance Hauling, LLC and Nature's Second Chance Leasing, LLC to GroupKLT, Inc. but, further answering, deny any remaining allegations contained in that paragraph to the

4832-3784-7404, v. 3

extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

17.     At no time did Group exercise the option to acquire the membership interests in or assets of NSC.

**ANSWER:**

Admitted.

18.     The Management Agreement permitted Group to take control of Hauling's cash, and make payment to Hauling's vendors and other creditors.

**ANSWER:**

For their response to paragraph 18 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains terms regarding GroupKLT, Inc.'s provision of management services with respect to Hauling, including the use of cash and making payments, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

19.     Group had numerous obligations under the Management Agreement. It further was prohibited from taking certain actions under the Management Agreement.

**ANSWER:**

For their response to paragraph 19 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains terms regarding GroupKLT, Inc.'s provision of management services with respect to Hauling, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

20.     Under the Management Agreement, Group was required to make payment on account of NSC's indebtedness. Management Agreement at §8 a) i).

**ANSWER:**

For their response to paragraph 20 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(i), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to the payment of certain lenders, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

21.    Under the Management Agreement, Group was required to obtain, on behalf of NSC, general liability and workers' compensation insurance. Management Agreement at §8 a) ii).

**ANSWER:**

For their response to paragraph 21 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(ii), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to the potential lapse of general liability and workers' compensation insurance, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

22.    Under the Management Agreement, Group was required to ensure that NSC's accounts payable not exceed the sum of $500,000.00 or average more than 60 days past due in the absence of a bona fide dispute concerning such accounts payable. Management Agreement at §8 a) iii).

**ANSWER:**

For their response to paragraph 22 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(iii), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to accounts payable, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

7

23.    Under the Management Agreement, Group was prohibited from engaging in any theft, embezzlement, or defalcation of any of NSC's assets. Management Agreement at §8 a) iv).

**ANSWER:**

For their response to paragraph 23 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(iv), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to potential theft, embezzlement or defalcation, but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

24.    Under the Management Agreement, Group was required to pay all of NSC's payroll. Management Agreement at § 8 a) v).

**ANSWER:**

For their response to paragraph 24 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(v), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to the potential failure to pay then-current payroll but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

25.    Under the Management Agreement, Group was prohibited from moving any of NSC's operating accounts absent consent of NSC's lenders. Management Agreement at §8 a) vi).

**ANSWER:**

For their response to paragraph 25 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(vi), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to the potential movement of accounts but, further answering, deny any remaining allegations contained in that paragraph to the

extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

26.     Under the Management Agreement, Group was prohibited form knowingly causing any commingling of funds between itself and NSC. Management Agreement at §8 a) vii).

**ANSWER:**

For their response to paragraph 26 of the Complaint, the KLT Parties admit that the 2017 Management Agreement contains a Section 8(a)(vii), which provides certain events that may be deemed a breach of the 2017 Management Agreement relating to the potential commingling of funds but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

27.     For a time, the parties operated successfully under the terms of the Management Agreement. In that respect, to the best of Hauling's knowledge, Group fulfilled its obligations under the Management Agreement and did not engage in conduct prohibited under the Management Agreement.

**ANSWER:**

For their response to paragraph 27 of the Complaint, the KLT Parties admit GroupKLT, Inc. fulfilled its obligations under the 2017 Management Agreement, including without limitation, refraining from taking actions prohibited by that agreement, but, further answering, deny any remaining allegations contained in that paragraph.

28.     During the fourth quarter of 2017 and for a time in January and February 2018, NSC and Group engaged in negotiations concerning the purchase of NSC's assets by one or more of the KLT Parties.

**ANSWER:**

For their response to paragraph 28 of the Complaint, the KLT Parties state that they engaged in merger negotiations with NSC and the related sale of both companies, but, further responding, deny any remaining allegations contained in that paragraph.

29.     While negotiations with NSC were ongoing, and without NSC's knowledge, the KLT Parties began to assimilate NSC's business and assets, including Hauling's customers.

**ANSWER:**

Denied.

## COUNT I
## COMPLAINT FOR TURNOVER DIRECTED AT THE KLT PARTIES

30.     Hauling repeats and realleges paragraphs 1 through 29 of this First Amended Complaint as though fully set forth in this Count I.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 29, above, as though fully set forth herein.

31.     In January, 2018, Hauling learned for the first time that Group or one or more of the KLT Parties had invoiced Hauling's customers as though they were customers of Group or one or more of the KLT Parties.

**ANSWER:**

For their response to paragraph 31 of the Complaint, the KLT Parties lack knowledge or

information sufficient to form a belief as to the truth of the allegations contained in that paragraph

and, therefore, deny same.

32.     Hauling inquired concerning the invoicing and was told by Group that it was a "mistake."

**ANSWER:**

Denied.

33.     Hauling thereafter learned that equipment owned by Leasing and used by Hauling in the operation of its business was "relabeled" to indicate it was being operating by one or more of the KLT Parties.

**ANSWER:**

For their response to paragraph 33 of the Complaint, the KLT Parties state that (a) with the

knowledge and consent of Leasing and Hauling; (b) solely because of Leasing and/or Hauling's

10

inability to maintain insurance coverage; and (c) to allow continuing service to Hauling's customers, certain equipment was labeled as being operated by one or more of the KLT Parties but, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

34.    On or about March 14, 2018, Hauling, through one of its bankers, learned that it was not collecting the proceeds from its accounts receivable, and it further learned that its funds were being used to pay what appear to be inflated invoices from one or more entities related to the KLT Parties.

**ANSWER:**

For their response to paragraph 34 of the Complaint, the KLT Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

35.    Hauling further learned that in early March, 2018, an employee of one of the KLT Parties, while using Hauling's internet/email domain name directed Waste Management, Inc., to make all payments to Group. A copy of the email exchange evidencing that direction from Group is attached hereto as **Exhibit B**.

**ANSWER:**

For their response to paragraph 35 of the Complaint, the KLT Parties state that because Hauling lost insurance coverage and was unable to legally service its customers, the KLT Parties offered to continue servicing those customers and directed payment accordingly.

36.    Hauling has obtained photographic evidence that as recently as March 27, 2018, the KLT Parties were operating trucks under Hauling's registry with the US Department of Transportation for transporting goods under a bill of lading in the name of the KLT Parties.

**ANSWER:**

For their response to paragraph 36 of the Complaint, the KLT Parties state that they used equipment under Hauling's registry with the knowledge and consent of Hauling and Leasing.

37.    Hauling is further informed and believes the KLT Parties are using Hauling's Comdata credit card to purchase fuel for trucks used to transport cardboard for Hauling's customers for the benefit of the account of the KLT Parties. In other words, the KLT Parties are

4832-3784-7404, v. 3

incurring debt chargeable to Hauling and creating accounts receivable the KLT Parties intend to collect for their own benefit and to the exclusion of Hauling.

**ANSWER:**

For their response to paragraph 37, KLT Parties state that at one time they did use the

Comdata account but paid any and all such charges in full; further responding, the KLT Parties

deny any remaining allegations contained in that paragraph.

38.    In summary, since the beginning of 2018, or shortly thereafter, the KLT Parties have been billing and collecting from Hauling all sums that would otherwise have been available to Hauling for payment of its obligations.

**ANSWER:**

Denied.

39.    Hauling did not authorize any of the foregoing actions by the KLT Parties.

**ANSWER:**

Denied.

40.    Sums received by the KLT Parties as a result of services performed for Hauling's customers and sums paid on account of inflated invoices to one or more of the KLT Parties (the "Proceeds") constitute property of Hauling's Chapter 7 bankruptcy estate pursuant to Section 541(a) of the United States Bankruptcy Code.

**ANSWER:**

Denied.

41.    In addition, the KLT Parties are in possession of Hauling's financial data, information concerning its assets and liabilities, and other operational information. Specifically, the KLT Parties have possession of all billing records, account receivable data, account payable information, expense records, and similar information necessary for Hauling to remain apprised of its financial condition and to police payments to its creditors. The foregoing shall be referred to, collectively, as the "Data."

**ANSWER:**

4832-3784-7404, v. 3

For their response to paragraph 41 of the Complaint, the KLT Parties state that, consistent

with the 2017 Management Agreement and/or other agreements with Hauling and Leasing, one or

more of the KLT Parties possess data relating to Hauling's assets and liabilities.

42.    Since early 2018, the KLT Parties precluded access to the Data by Hauling, its
principals and professionals.

**ANSWER:**

Denied.

43.    Hauling has demanded that the KLT Parties restore access to the Data by Hauling,
its principals, and professionals; however, despite such demands, the KLT Parties have refused
and continue to refuse to restore such access.

**ANSWER:**

For their response to paragraph 43 of the Complaint, the KLT Parties denies that they have

refused access to the data in their possession relating to Hauling's assets and liabilities.

44.    The commencement of Hauling's Chapter 11 case created an estate, which consist
of all legal or equitable interests of Hauling in property. 11 U.S.C. §541(a)(1).

**ANSWER:**

For their response to paragraph 44 of the Complaint, the KLT Parties state that the

allegations contained in that paragraph are legal conclusions to which no response is required.

45.    Section 542 of the Bankruptcy Code requires that an entity in possession, custody,
or control of property a debtor in possession may use, sell, or lease, shall account for and deliver
such property to the debtor in possession.

**ANSWER:**

For their response to paragraph 45 of the Complaint, the KLT Parties state that the

allegations contained in that paragraph are legal conclusions to which no response is required.

46.    Sums collected by the KLT Parties from Hauling's customers constitute property
of Hauling's Chapter 11 estate, and the KLT Parties are required to account for such sums and turn
those sums over to Hauling pursuant to Section 542 of the Bankruptcy Code.

**ANSWER:**

For their response to paragraph 46 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

47.    Furthermore, the Data constitutes Hauling's property and is property Hauling may use in prosecution of this Chapter 11 case.

**ANSWER:**

For their response to paragraph 47 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

48.    The Proceeds and the Data are not of inconsequential value and benefit to the estate.

**ANSWER:**

For their response to paragraph 48 of the Complaint, the KLT Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

49.    The KLT Parties should be required to immediately account for and turnover to Hauling all sums received by the KLT Parties in exchange for services rendered to Hauling's customers.

**ANSWER:**

Denied.

**COUNT II**
**PRELIMINARY AND PERMANENT INJUNCTIVE**
**RELIEF DIRECTED AT THE KLT PARTIES**

50.    Hauling repeats and realleges paragraphs 1 through 49 of this First Amended Complaint as though fully set forth in this Count II.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs 1 through 49, above, as though fully set forth herein.

51.    In addition to the foregoing, Hauling is informed and believes, that having assimilated and absorbed Hauling's business, the KLT Parties are engaged in negotiations for the sale of the assets and the business which includes Hauling's business and customer relationships.

4832-3784-7404, v. 3

**ANSWER:**

Denied.

52.    A sale of Hauling's business and assets would cause substantial harm to its Chapter 11 estate and the ability of creditors to recover sums payable to them.

**ANSWER:**

Denied.

53.    Further, KLT Parties' unauthorized actions in using and benefiting from Hauling's business, to the exclusion of Hauling, in addition to disposing of Hauling's assets and business without the consent of Hauling's principals, threatens Hauling in an unascertainable amount of damages.

**ANSWER:**

Denied.

54.    Hauling has a clear ascertainable right to its Data, Proceeds, and control of the Hauling business and its assets, including making decisions concerning the direction of the business and its assets. This right is in need of immediate protection.

**ANSWER:**

Denied.

55.    KLT Parties' continued use of Hauling's Data, Proceeds, and business assets to Hauling's exclusion and detriment is causing, and will continue to cause irreparable harm to Hauling's business, Hauling's relationships with employees and customers, Hauling's goodwill and reputation in its established business markets, and the swift administration of Hauling's Chapter 11 estate, for which Hauling has no adequate remedy at law.

**ANSWER:**

Denied.

56.    The benefits of issuing an injunction in Hauling's favor far outweigh any potential harm to Defendants, as Defendants have no right to the continued unauthorized use of Hauling's Data, Proceeds, and business assets, and such unauthorized use poses unascertainable harm to Hauling's business, Hauling's relationships with employees and customers, Hauling's goodwill and reputation, and the swift administration of Hauling's Chapter 11 estate.

**ANSWER:**

Denied.

4832-3784-7404, v. 3

57.     Hauling is likely to succeed on the merits of its case, as the KLT Parties' are in clear violation of the Management Agreement, and have manifested a clear intent to assimilate and absorb Hauling's business, with the future intent of selling Hauling's business and assets without Hauling's knowledge, involvement, or consent.

**ANSWER:**

Denied.

58.     Issuing an injunction in Hauling's favor will not harm the public interest, as the injunction will help protect the integrity of the administration of Hauling's Chapter 11 case, and its creditors' ability to recover sums payable to them.

**ANSWER:**

Denied.

## COUNT III
## BREACH OF FIDUCIARY DUTY DIRECTED AT DEFENDANT GROUPKLT, INC.

59.     Hauling repeats and realleges paragraphs 1 through 58 of this First Amended Complaint as though fully set forth in this Count III.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 49, above, as though fully set forth herein.

60.     As more fully detailed in Exhibit A and Count I above, on January 13, 2017, Group, Hauling, Leasing, and the then-members of Hauling and Lease, Vern Van Hoy and J. Thomas Long, entered into a Management Agreement, under which Group agreed to undertake management of the day-to-day operations of Hauling's and Leasing's business operations and financial affairs.

**ANSWER:**

For their response to paragraph 60 of the Complaint, the KLT Parties admit that on or about

January 13, 2017, Nature's Second Chance Hauling, LLC, Nature's Second Chance Leasing, LLC,

J. Thomas Long, Vern Van Hoy, and GroupKLT, Inc. entered into the 2017 Management

Agreement under which the parties agreed to various obligations, including the provision of

management services, all as set forth in that 2017 Management Agreement and a copy of that

Agreement is attached to the Complaint as Exhibit A, but, further answering, deny any remaining

allegations contained in that paragraph to the extent such allegations regarding the terms of the

2017 Management Agreement are incomplete or inconsistent with that agreement.

61.     Group had numerous obligations under the Management Agreement, including
controlling Hauling's cash, making payments on Hauling's behalf to Hauling's vendors, creditors,
and on account of NSC's indebtedness; paying NSC's payroll; obtaining general liability and
workers' compensation insurance on behalf of NSC, and ensuring NSC's accounts payable did not
exceed the sum of $500,000.00 or average more than 60 days past due in the absence of a bona
ride dispute concerning such account payable.

**ANSWER:**

For their response to paragraph 61 of the Complaint, the KLT Parties admit that the 2017

Management Agreement contains various provisions regarding certain events that may be deemed

a breach of the 2017 Management Agreement relating, among other things, to Hauling's cash,

making payments on Hauling's behalf to Hauling's vendors, creditors, and on account of NSC's

indebtedness; paying NSC's payroll; obtaining general liability and workers' compensation

insurance on behalf of NSC, and ensuring NSC's accounts payable did not exceed the sum of

$500,000.00 or average more than 60 days past due in the absence of a bona ride dispute

concerning such account payable but, further answering, deny any remaining allegations contained

in that paragraph to the extent such allegations regarding the terms of the 2017 Management

Agreement are incomplete or inconsistent with that agreement.

62.     Group was also prohibited from taking certain actions under the Management
Agreement, including engaging in theft, embezzlement, or defalcation of NSC's assets, moving
any of NSC's operating accounts absent consent, and knowingly causing any commingling of
funds between Group and NSC.

**ANSWER:**

For their response to paragraph 62 of the Complaint, the KLT Parties admit that the 2017

Management Agreement contains various provisions regarding certain events that may be deemed

a breach of the 2017 Management Agreement relating, among other things, to theft, embezzlement, or defalcation of NSC's assets, moving any of NSC's operating accounts absent consent, and knowingly causing any commingling of funds between Group and NSC but, further answering, deny any remaining allegations contained in that paragraph to the extent such allegations regarding the terms of the 2017 Management Agreement are incomplete or inconsistent with that agreement.

63.    By virtue of its obligations under the Management Agreement, and as an insider of Hauling within the definition of 11 U.S.C. § 101(31), Group owed a fiduciary duty to Hauling.

**ANSWER:**

   Denied.

64.    Starting in or about the fourth quarter of 2017, Group began engaging in activities directly prohibited under the Management Agreement, and in further breach of its fiduciary duty owed to Hauling. Such activities include, but are not limited to the following:

(a)    Engaging in negotiations concerning the purchase of NSC's assets by one or more of the KLT parties;

(b)    Assimilating NSC's business and assets, including Hauling's customers;

(c)    Invoicing and billing Hauling's customers as though they were customers of Group or one or more of the KLT Parties;

(d)    Usurping and relabeling equipment owned by Leasing and used by Hauling in the operation of its business to indicate it as being operated by one or more of the KLT Parties;

(e)    Using funds collected from Hauling's accounts receivable to pay inflated invoices from one or more entities related to the KLT Parties;

(f)    Directing Hauling's customers to make payments to Group;

(g)    Operating trucks under Hauling's registry with the US Department of Transportation for transporting goods under a bill of lading in the name of KLT Parties;

(h)    Incurring debt chargeable to Hauling and creating accounts receivable intended to be collected for the KLT Parties' own benefit to the exclusion of Hauling; and

(i)    Precluding access by Hauling to Hauling's Data (as defined herein).

**ANSWER:**

   Denied.

65.    At no time did Hauling authorize any of the aforementioned actions.

**ANSWER:**

Denied.

66.     As a direct result of Group's engagement in self-interested transactions and breach of fiduciary duty, Hauling has sustained damages, including the depletion and misappropriation of business assets, the incurrence of unauthorized debt chargeable to Hauling for one or more of the KLT Parties' benefit to the exclusion of Hauling, loss of use and control of operating equipment and vehicles, impaired customer and employee relationships, and innumerable harm to Hauling's goodwill and business reputation.

**ANSWER:**

Denied.

## COUNT IV
## AVOIDANCE AND RECOVERY OF PREFERENTIAL
## TRANSFERS AND TO DISALLOW CLAIMS
## DIRECTED AT DEFENDANT GROUPKLT, INC.

67.     Hauling repeats and realleges paragraphs 1 through 67 of this First Amended Complaint as though fully set forth in this Count IV.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 66, above, as though fully set forth herein.

68.     On or within the ninety (90) days before the Petition Date, that is between December 19, 2017 and March 19, 2018 (the "Preference Period"), and/or within one year before the Petition Date, that is between March 19, 2017 and March 19, 2018, Hauling continued to operate its business affairs, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including Group.

**ANSWER:**

For their response to paragraph 68 of the Complaint, the KLT Parties admit that Hauling

transferred property during the Preference Period, including making some payments due to the

KLT Parties but, further answering, deny the remaining allegations contained in that paragraph.

69.     During the Preference Period and/or the one-year period before the Petition Date, Hauling made no less than thirty-five (35) transfers to Group in an amount not less than the aggregate sum of $2,323,334.97 (the "Group Transfers").

**ANSWER:**

For their response to paragraph 69 of the Complaint, the KLT Parties state that Hauling fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

70.    At the time of the Group Transfers, Group was a creditor of Hauling within the meaning of 11 U.S.C. § 101(10).

**ANSWER:**

For their response to paragraph 70 of the Complaint, the KLT Parties state that Hauling fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group and, therefore, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore deny same. Further answering, the KLT Parties admit that one or more of the KLT Parties was a creditor of Hauling beginning in January 2017.

71.    At the time of the Group Transfers Group was an insider of Hauling within the meaning of 11 U.S.C. § 101(31).

**ANSWER:**

Denied.

72.    At the time of the Group Transfers, Group held a right to payment on account of an obligation owed to Group by Hauling.

**ANSWER:**

For their response to paragraph 72 of the Complaint, the KLT Parties state that Hauling fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group and, therefore, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore deny same. Further answering, the KLT

Parties admit that one or more of the KLT Parties was a creditor of Hauling beginning in January 2017.

73.     The Group Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Group Transfers either reduced or fully satisfied a debt then owed by Hauling to Group.

**ANSWER:**

For their response to paragraph 73 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

74.     The Group Transfers were for, or on account of, antecedent debts owed by Hauling before the Transfers were made.

**ANSWER:**

For their response to paragraph 74 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that because Hauling fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

75.     At the time the Group Transfers were made, Hauling was insolvent, in that the sum of its liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 75 of the Complaint, the KLT Parties state that because Plaintiff fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

76.     As a result of the Group Transfers, Group received more than it would have received if: (i) the Group Transfers had not been made; and (ii) Group received payment of its debts under the provisions of the Bankruptcy Code.

**ANSWER:**

For their response to paragraph 76 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that because Plaintiff fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

77.    In accordance with the foregoing, the Group Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

**ANSWER:**

For their response to paragraph 77 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

78.    Group was the initial transferee of the Group Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Transfers were made.

**ANSWER:**

For their response to paragraph 78 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that Hauling fails to identify any of the thirty-five specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

79.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

Denied.

22

80.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

Denied.

**COUNT V**
**AVOIDANCE AND RECOVERY OF FRAUDULENT**
**TRANSFERS PURSUANT TO 11 U.S.C. § 548 AND TO**
**DISALLOW CLAIMS DIRECTED AT DEFENDANT GROUPKLT, INC.**

81.    Hauling repeats and realleges paragraphs 1 through 79 of this First Amended Complaint as though fully set forth in this Count V.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 80, above, as though fully set forth herein.

82.    At various times, and from time to time, Hauling made transfers of money to Group.

**ANSWER:**

For their response to paragraph 82 of the Complaint, the KLT Parties state that Hauling

would sometimes make payments on invoices that it owed to Group.

83.    The transfers from Debtor to Group were in the form of, among other things, checks drawn from Hauling's operating accounts.

**ANSWER:**

For their response to paragraph 83 of the Complaint, the KLT Parties state that Hauling

would sometimes make payments in the form of checks on invoices that it owed to Group. Further

answering, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific

transfers by either date or amount allegedly made to Group and, further answering, lack knowledge

4832-3784-7404, v. 3

or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

84.    Upon information and belief, during the two (2) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Group in the aggregate sum of no less than 2,323,334.97 (the "Group Fraudulent Transfers").

**ANSWER:**

For their response to paragraph 84 of the Complaint, the KLT Parties state that Hauling fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

85.    Hauling did not receive reasonably equivalent value in exchange for the Group Fraudulent Transfers.

**ANSWER:**

For their response to paragraph 85 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

86.    Hauling was insolvent at the time of the Group Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 86 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

87.    Alternatively, at the time of the Group Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling

intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**

For their response to paragraph 87 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

88.     The Group Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548.

**ANSWER:**

For their response to paragraph 88 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

89.     Alternatively, in the event the Group Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 548, they are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.,* as more fully alleged in Count VI below.

**ANSWER:**

For their response to paragraph 89 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

90.     Group was the initial transferee of the Group Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Fraudulent Transfers were made.

**ANSWER:**

For their response to paragraph 90 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

91.     As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Fraudulent Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

For their response to paragraph 91 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

92.     Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

For their response to paragraph 92 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to

26

Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

**COUNT VI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT**
**TRANSFERS PURSUANT TO 11 U.S.C. § 544 AND TO**
**DISALLOW CLAIMS DIRECTED AT DEFENDANT GROUPKLT, INC.**

93.    Hauling repeats and realleges paragraphs 1 through 92 of this First Amended Complaint as though fully set forth in this Count VI.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs 1 through 92, above, as though fully set forth herein.

94.    At various times, and from time to time, Hauling made transfers of money to Group.

**ANSWER:**

For their response to paragraph 94 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

95.    The transfers from Debtor to Group were in the form of, among other things, checks drawn from Hauling's operating accounts.

**ANSWER:**

For their response to paragraph 95 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

4832-3784-7404, v. 3

96.    Upon information and belief, during the four (4) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Group in the aggregate sum of no less than 2,323,334.97 (the "Group Fraudulent Transfers").

**ANSWER:**

For their response to paragraph 96 of the Complaint, the KLT Parties state that Plaintiff

fails to identify in this paragraph any specific transfers by either date or amount allegedly made to

Group and, further answering, lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in that paragraph and, therefore, deny same.

97.    Hauling did not receive reasonably equivalent value in exchange for the Group Fraudulent Transfers.

**ANSWER:**

For their response to paragraph 97 of the Complaint, the KLT Parties state that Plaintiff

fails to identify in this paragraph any specific transfers by either date or amount allegedly made to

Group and, further answering, lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in that paragraph and, therefore, deny same.

98.    Hauling was insolvent at the time of the Group Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 98 of the Complaint, the KLT Parties state that Plaintiff

fails to identify in this paragraph any specific transfers by either date or amount allegedly made to

Group and, further answering, lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in that paragraph and, therefore, deny same.

99.    Alternatively, at the time of the Group Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**

4832-3784-7404, v. 3

For their response to paragraph 99 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

100.    The Group Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*

**ANSWER:**

For their response to paragraph 100 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

101.    Alternatively, in the event the Group Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.,* they are avoidable pursuant to 11 U.S.C. § 548 as more fully alleged in Count V above.

**ANSWER:**

For their response to paragraph 101 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

102.    Group was the initial transferee of the Group Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Group Fraudulent Transfers were made.

**ANSWER:**

For their response to paragraph 101 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

103.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Group, all Group Fraudulent Transfers, in the respective aggregate sums of $2,323,334.97, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

For their response to paragraph 103 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

104.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Group and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Group pays to Hauling an amount equal to the aggregate amount of the avoidable Group Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

For their response to paragraph 103 of the Complaint, the KLT Parties state that Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Group and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same. Further answering, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

4832-3784-7404, v. 3

## COUNT VII
## AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS AND TO
## DISALLOW CLAIMS DIRECTED AT DEFENDANT KLT INDUSTRIES, INC.

105.    Hauling repeats and realleges paragraphs 1 through 104 of this First Amended Complaint as though fully set forth in this Count VII.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 104, above, as though fully set forth herein.

106.    On or within the ninety (90) days before the Petition Date, that is between December 19, 2017 and March 19, 2018 (the "Preference Period"), and/or within one year before the Petition Date, that is between March 19, 2017 and March 19, 2018, Hauling continued to operate its business affairs, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including Industries.

**ANSWER:**

For their response to paragraph 106 of the Complaint, the KLT Parties state that Plaintiff

fails to identify any specific transfers, either by date or amount, allegedly made to Industries and,

further answering, lack knowledge or information sufficient to form a belief as to the truth of the

allegations contained in that paragraph and, therefore, deny same.

107.    During the Preference Period and/or the one-year period before the Petition Date, Hauling made no less than fourteen (14) transfers to Industries in an amount not less than the aggregate sum of $904,339.14 (the "Industries Transfers").

**ANSWER:**

For their response to paragraph 107 of the Complaint, the KLT Parties state that Plaintiff

fails to identify any of the fourteen specific transfers by either date or amount allegedly made to

Industries and, further answering, lack knowledge or information sufficient to form a belief as to

the truth of the allegations contained in that paragraph and, therefore, deny same.

108.    At the time of the Industries Transfers, Industries was a creditor of Hauling within the meaning of 11 U.S.C. § 101(10).

**ANSWER:**

For their response to paragraph 108 of the Complaint, the KLT Parties state that Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly made to Industries and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

109.    At the time of the Industries Transfers, Industries was an insider of Hauling within the meaning of 11 U.S.C. § 101(31).

**ANSWER:**

Denied.

110.    At the time of the Industries Transfers, Industries held a right to payment on account of an obligation owed to Industries by Hauling.

**ANSWER:**

For their response to paragraph 110 of the Complaint, the KLT Parties state that Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly made to Industries and, further answering, lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

111.    The Industries Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Industries Transfers either reduced or fully satisfied a debt then owed by Hauling to Industries.

**ANSWER:**

For their response to paragraph 111 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

112.    The Industries Transfers were for, or on account of, antecedent debts owed by Hauling before the Transfers were made.

**ANSWER:**

For their response to paragraph 112 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

Further answering, the KLT Parties state that because Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

113.    At the time the Industries Transfers were made, Hauling was insolvent, in that the sum of its liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 113 of the Complaint, the KLT Parties state that because Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

114.    As a result of the Industries Transfers, Industries received more than it would have received if: (i) the Industries Transfers had not been made; and (ii) Industries received payment of its debts under the provisions of the Bankruptcy Code.

**ANSWER:**

For their response to paragraph 114 of the Complaint, the KLT Parties state that because Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

115.    In accordance with the foregoing, the Industries Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

**ANSWER:**

For their response to paragraph 115 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

116.    Industries was the initial transferee of the Industries Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Transfers were made.

**ANSWER:**

For their response to paragraph 116 of the Complaint, the KLT Parties state that because

Plaintiff fails to identify any of the fourteen specific transfers by either date or amount allegedly

made to Industries, they lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in that paragraph and, therefore, deny same.

117.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Transfers, in the respective aggregate sum of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

Denied.

118.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays to Hauling an amount equal to the aggregate amount of the avoidable Industries Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

Denied.

**COUNT VIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT**
**TRANSFERS PURSUANT TO 11 U.S.C. § 548 AND TO DISALLOW**
**CLAIMS DIRECTED AT DEFENDANT KLT INDUSTRIES, INC.**

119.    Hauling repeats and realleges paragraphs 1 through 118 of this First Amended Complaint as though fully set forth in this Count VIII.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 104, above, as though fully set forth herein.

120.    At various times, and from time to time, Hauling made transfers of money to Industries.

**ANSWER:**

For their response to paragraph 94 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

121.    The transfers from Debtor to Industries were in the form of, among other things, checks drawn from Hauling's operating accounts.

**ANSWER:**

For their response to paragraph 121 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

122.    Upon information and belief, during the two (2) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Industries in the aggregate sum of no less than $904,339.14 (the "Industries Fraudulent Transfers").

**ANSWER:**

For their response to paragraph 122 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

123.    Hauling did not receive reasonably equivalent value in exchange for the Industries Fraudulent Transfers.

**ANSWER:**

For their response to paragraph 123 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly

made to Industries, they lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in that paragraph and, therefore, deny same.

124.    Hauling was insolvent at the time of the Industries Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 124 of the Complaint, the KLT Parties state that because

Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly

made to Industries, they lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in that paragraph and, therefore, deny same.

125.    Alternatively, at the time of the Industries Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**

For their response to paragraph 125 of the Complaint, the KLT Parties state that because

Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly

made to Industries, they lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in that paragraph and, therefore, deny same.

126.    The Industries Fraudulent Transfers are avoidable pursuant to U.S.C. § 548.

**ANSWER:**

For their response to paragraph 126 of the Complaint, the KLT Parties state that the

allegations contained in that paragraph are legal conclusions to which no response is required.

127.    Alternatively, in the event the Industries Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 548, they are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, as more fully alleged in Count IX below.

**ANSWER:**

For their response to paragraph 127 of the Complaint, the KLT Parties state that the

allegations contained in that paragraph are legal conclusions to which no response is required.

128.    Industries was the initial transferee of the Industries Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Fraudulent Transfers were made.

**ANSWER:**

For their response to paragraph 128 of the Complaint, the KLT Parties state that because

Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly

made to Industries, they lack knowledge or information sufficient to form a belief as to the truth

of the allegations contained in that paragraph and, therefore, deny same.

129.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Fraudulent Transfers, in the respective aggregate sums of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

Denied.

130.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays to Hauling an amount equal to the aggregate amount of the avoidable Industries Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

Denied.

## COUNT IX
## AVOIDANCE AND RECOVERY OF FRAUDULENT
## TRANSFERS PURSUANT TO 11 U.S.C. § 544 AND TO DISALLOW
## CLAIMS DIRECTED AT DEFENDANT KLT INDUSTRIES, INC.

131.    Hauling repeats and realleges paragraphs 1 through 130 of this First Amended Complaint as though fully set forth in this Count IV.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs 1 through 130, above, as though fully set forth herein.

132.    At various times, and from time to time, Hauling made transfers of money to Industries.

**ANSWER:**

For their response to paragraph 132 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

133.    The transfers from Debtor to Industries were in the form of, among other things, checks drawn from Hauling's operating accounts.

**ANSWER:**

For their response to paragraph 133 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

134.    Upon information and belief, during the four (4) year period preceding the commencement of Hauling's Chapter 11 case, Hauling made a certain transfer or certain transfers to Industries in the aggregate sum of no less than $904,339.14 (the "Industries Fraudulent Transfers").

**ANSWER:**

For their response to paragraph 134 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

135.    Hauling did not receive reasonably equivalent value in exchange for the Industries Fraudulent Transfers.

**ANSWER:**

For their response to paragraph 135 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

136.    Hauling was insolvent at the time of the Industries Fraudulent Transfers, in that Hauling's liabilities exceeded the fair value of Hauling's assets.

**ANSWER:**

For their response to paragraph 136 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

137.    Alternatively, at the time of the Industries Fraudulent Transfers, Hauling was engaged in a business for which its remaining assets constituted unreasonably small capital and/or Hauling intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**

For their response to paragraph 137 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

138.    The Industries Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*

**ANSWER:**

For their response to paragraph 138 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required.

Further answering, the KLT Parties state that because Plaintiff fails to identify any of the specific transfers by either date or amount allegedly fraudulent transfers made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

139.    Alternatively, in the event the Industries Fraudulent Transfers are not avoidable pursuant to 11 U.S.C. § 544 and 740 ILCS 160/1, *et seq.*, they are avoidable pursuant to 11 U.S.C. § 548 as more fully alleged in Count VIII above.

**ANSWER:**

For their response to paragraph 139 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that because Plaintiff fails to identify any of the specific transfers by either date or amount allegedly fraudulent transfers made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

140.    Industries was the initial transferee of the Industries Fraudulent Transfers, or the immediate or mediate transferee or the person for whose benefit the Industries Fraudulent Transfers were made.

**ANSWER:**

For their response to paragraph 140 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific transfers by either date or amount allegedly made to Industries, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

141.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from Industries, all Industries Fraudulent Transfers, in the respective aggregate sums of $904,339.14, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

Denied.

142.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of Industries and/or its assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as Industries pays to Hauling an amount equal to the aggregate amount of the avoidable Industries Fraudulent Transfers as more fully set out above, plus interest thereon and costs.

**ANSWER:**

Denied.

**COUNT X**
**AVOIDANCE AND RECOVERY OF**
**POSTPETITION TRANSFERS AND TO DISALLOW**
**CLAIMS DIRECTED AT THE KLT PARTIES**

143.    Hauling repeats and realleges paragraphs 1 through 142 of this First Amended Complaint as though fully set forth in this Count X.

**ANSWER:**

The KLT Parties repeat and reallege their answers and responses contained in paragraphs

1 through 142, above, as though fully set forth herein.

144.    The KLT Parties conducted business with Hauling through and including the Petition Date.

**ANSWER:**

Admitted.

145.    Following the Petition Date, Hauling continued to operate its business affairs as a debtor in possession, including transferring property, either by checks, cashier checks, wire transfers, direct deposit, or otherwise, to certain individuals and entities, including, upon information and belief, one or more of the KLT Parties.

**ANSWER:**

For their response to paragraph 145 of the Complaint, the KLT Parties state that because

Plaintiff fails to identify in this paragraph any specific post-petition transfers by either date or

amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form

a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

4832-3784-7404, v. 3

146.    Upon information and belief, Hauling made post petition transfers of its property to or for the benefit of the KLT Parties ("Post Petition Transfers").

**ANSWER:**

For their response to paragraph 146 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

147.    These Post Petition Transfers were made post petition on account of a pre- petition obligation or obligations of Hauling to one or more of the KLT Parties.

**ANSWER:**

For their response to paragraph 147 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

148.    These Post Petition Transfers were not authorized by the Bankruptcy Code or by the Bankruptcy Court.

**ANSWER:**

For their response to paragraph 148 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

149.    During the course of this adversary proceeding, Hauling may learn of additional transfers made to one or more of the KLT Parties. It is Hauling's intention to avoid and recover all avoidable or otherwise unauthorized transfers made by Hauling of an interest in Hauling's property and to or for the benefit of the KLT Parties or any other transferee. Hauling reserves its right to amend this First Amended Complaint to include further information regarding the Post Petition Transfers, any additional transfers, modifications or revisions to the names of the KLT Parties and transferees, additional defendants, and/or additional causes of action (including, but not exclusively under, 11 U.S.C. §§ 502, 544, 545, 547, 548, 549 and/or 550), that may become known

42

to Hauling (collectively, the "Amendments"), and for such Amendments to relate back to this First Amended Complaint.

**ANSWER:**

Denied.

150.    In accordance with the foregoing, the Post Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

**ANSWER:**

For their response to paragraph 150 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that because Plaintiff fails to identify any of the specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

151.    Further, the KLT Parties were the initial transferee of their respective Post Petition Transfers, or the immediate or mediate transferee or the person for whose benefit the Post Petition Transfers were made.

**ANSWER:**

For their response to paragraph 151 of the Complaint, the KLT Parties state that because Plaintiff fails to identify in this paragraph any specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

152.    As such, pursuant to 11 U.S.C. § 550, Hauling is entitled to recover from the KLT Parties, all Post Petition Transfers, in their respective aggregate sums, plus interest thereon to the date of payment, and the costs of this action.

**ANSWER:**

Denied.

153.    Further, pursuant to 11 U.S.C § 502(d) and (j), any and all Claims of the KLT Parties and/or their assignee(s) against Hauling's Chapter 11 estate or Hauling, whether previously allowed or otherwise, must be disallowed until such time as the KLT Parties pay to Hauling an amount equal to the aggregate amount of their respective avoidable Post Petition Transfers, plus interest thereon and costs.

**ANSWER:**

For their response to paragraph 153 of the Complaint, the KLT Parties state that the allegations contained in that paragraph are legal conclusions to which no response is required. Further answering, the KLT Parties state that because Plaintiff fails to identify any of the specific post-petition transfers by either date or amount allegedly made to the KLT Parties, they lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and, therefore, deny same.

4832-3784-7404, v. 3

## **AFFIRMATIVE DEFENSES**

Defendants GroupKLT, Inc., KLT Logistics, Inc., KLT Transport, LLC, and KLT Industries, Inc. (collectively, the "KLT Parties"), by and through their attorneys, Howard & Howard Attorneys PLLC, assert the following as their affirmative defenses to Nature's Second Chance Hauling, LLC's ("Plaintiff" or "Hauling") First Amended Complaint for Accounting, Turnover, Preliminary and Permanent Injunctive Relief, and to Avoid and Recover Transfers (the "Complaint"):

1.      Plaintiff's claims against the KLT Parties fail, in whole or in part, to state a claim for which relief can be granted.

2.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the applicable statute of limitations.

3.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of accord and satisfaction.

4.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of waiver.

5.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of estoppel.

6.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of failure of consideration.

7.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of release.

8.      Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of consent.

4832-3784-7404, v. 3

9.     Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of fraud.

10.     Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of license.

11.     Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of payment.

12.     Plaintiff's claims against the KLT Parties are barred, in whole or in part, by the doctrine of the statute of frauds.

13.     Plaintiff's claims against the KLT Parties for the recovery of transfers as preferences are barred, in whole or in part, because such transfers were made as contemporaneous exchanges for new value pursuant to 11 U.S.C. §547(c)(1).

14.     Plaintiff's claims against the KLT Parties for the recovery of transfers as preferences are barred, in whole or in part, because such transfers were made in the ordinary course of Plaintiff's business pursuant to 11 U.S.C. §547(c)(2).

15.     Plaintiff's claims against the KLT Parties for the recovery of transfers as preferences are barred, in whole or in part, because the KLT Parties gave subsequent new value to or for the benefit of Plaintiff pursuant to 11 U.S.C. §547(c)(4).

Dated: July 9, 2018.                          HOWARD & HOWARD ATTORNEYS PLLC

                                        By:     /s/     Mark A. Bogdanowicz
                                                Mark A. Bogdanowicz, ARDC #6301322
                                                Timothy D. Gronewold, ARDC #6296631
                                                Howard & Howard Attorneys PLLC
                                                211 Fulton Street, Suite 600
                                                Peoria, Illinois 61602
                                                Telephone: (309) 672-1483
                                                Facsimile: (309) 672-1568
                                        Email: mbogdanowicz@howardandhoward.com
                                                tgronewold@howardandhoward.com

4832-3784-7404, v. 3

## CERTIFICATE OF ELECTRONIC FILING
## AND CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on July 9, 2018, I electronically filed a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which sent notification of such filing to the following:

**Steven M. Wallace**
**steven.wallace@heplerbroom.com**

I also certify that a true and correct copy of the foregoing document was served by First Class United States Mail, postage prepaid, on July 9, 2018, to the following non-CM/ECF participant(s):

**None.**

/s/    Mark A. Bogdanowicz
Mark A. Bogdanowicz, ARDC No. 6301322
Timothy D. Gronewold, ARDC #6296631
Howard & Howard Attorneys PLLC
211 Fulton Street, Suite 600
Peoria, Illinois 61602
Telephone: (309) 672-1483
Facsimile:  (309) 672-1568
Email: mbogdanowicz@howardandhoward.com
        tgronewold@howardandhoward.com

4832-3784-7404, v. 3